Ronald S. BIDDLE, Plaintiff–Appellant,

v.

Amy J. MARTIN and Paul Lehmann, Defendants–Appellees.

No. 92–2437.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 26, 1993.[1]

Decided April 22, 1993.

1. After this case was set for oral argument, the parties agreed to submit the case for decision on the briefs pursuant to Federal Rule of Appellate Procedure 34(f). Accordingly, the case has been decided on the briefs.

George F. Taseff, Jennings, Novick, Taseff, Smalley & Davis, Bloomington, IL, for plaintiff-appellant.

Thomas G. DiCianni, Ancel, Glink, Diamond & Cope, Chicago, IL, for defendants-appellees.

Before BAUER, Chief Judge, FLAUM, and MANION, Circuit Judges.

BAUER, Chief Judge.

Ronald S. Biddle brought this action under 42 U.S.C. § 1983, claiming he was unlawfully arrested and maliciously prosecuted by the defendants, two Normal, Illinois police officers. The district court found that the police had probable cause to arrest Biddle. Accordingly, it found that the officers are entitled to qualified immunity for their actions, and granted their motion for summary judgment on the unlawful arrest claim. The court also determined that the malicious prosecution claim is barred by the finding of probable cause. Biddle appeals. We affirm.

I.

Ronald Biddle, his brother Tim, and two friends, Dana Mitchell and Lori Miller were taking Mitchell home from work shortly after 3 a.m. on September 8, 1990. Ron, Tim, and Miller had been drinking at a wedding reception and a local tavern. Tim and Ron had had enough to drink so neither wanted to drive. Although Miller had also been drinking, she drove Ron Biddle's van. Officer Cannon stopped the van and administered field sobriety tests to Miller. She failed the tests and Cannon arrested her for driving under the influence of alcohol.

Cannon asked the remaining passengers if any of them had a valid driver's license and wanted to drive the van. They all declined. Cannon told the passengers that unless someone drove the van home, it would have to be towed. Tim Biddle and Mitchell decided to try to contact two friends from a nearby pay phone to drive the van for them. Ron Biddle stayed with his van. Before Cannon left with Miller, Officer Amy Jo Martin arrived. She assisted Cannon in placing Miller under arrest and then began to complete a tow report on Biddle's van.

After Cannon left, Biddle began shouting at Martin about towing the van. He believed he was entitled to have someone come to pick it up, and Martin believed that the van would have to be towed. Biddle was intoxicated, and kept arguing with Martin. He shouted and swore at her for almost ten minutes. Biddle Deposition at 26, 38–39. Eventually, Martin asked him for his name and identification, but Biddle refused to give it to her. According to Martin, Biddle walked up and down on the sidewalk, waving his arms, swearing and shouting. Because of Biddle's continual shouting Martin decided she could not finish the tow report. As she walked toward her squad car, Biddle asked her a question. She did not hear it, so she asked him to repeat it. He yelled at her "You heard what I said—Now answer me!" Incident Report, Martin Deposition Exhibit 1. Because Biddle continued to be very irate and because he is bigger than she is, Martin became concerned for her safety and called

for back-up. Officer Paul Lehmann arrived on the scene and Biddle was arrested for obstructing a police officer under 720 ILCS 5/31–1 (formerly Ill.Rev.Stat. ch. 38, para. 31–1). Because Biddle continued to be disruptive and uncontrollable, Biddle was taken from the Normal Police Station to the County Jail. Martin Deposition at 68. The charge against Biddle was eventually dismissed. Biddle admits that he shouted, swore at, and argued with the officers. He also admits that he was intoxicated. He maintains, however, that the officers' response to his behavior was unreasonable.

Biddle sued Officers Martin and Lehmann under 42 U.S.C. § 1983 for false arrest and malicious prosecution. The district court granted summary judgment for the officers, finding that Biddle's unlawful arrest claim was without merit because the officers had probable cause to arrest him for obstruction of justice, disorderly conduct, and for allowing someone to operate his vehicle in a manner contrary to law in violation of 625 ILCS 5/16–202 (formerly Ill.Rev.Stat. ch. 95½, para. 16–202). The court also found that because the arrest was reasonable, the officers violated no clearly established constitutional rights, and consequently were entitled to qualified immunity for their actions. The court also noted that because Biddle's arrest was supported by probable cause, his malicious prosecution claim must fail under our ruling in *Fernandez v. Perez*, 937 F.2d 368, 371 (7th Cir.1991).

On appeal, Biddle contends that genuine issues of material fact preclude the entry of summary judgment on the probable cause question, and contests the district court's ruling on his malicious prosecution claim.

## II. Analysis

### A. Standard of Review

We review the district court's summary judgment determination *de novo. Marshall v. Allen,* 984 F.2d 787 (7th Cir.1993). In conducting this review, we consider the evidence in the light most favorable to the non-moving party. The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushi-*

*ta Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(c) "by its very terms, ... provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

### B. Probable Cause to Arrest

The defendant police officers contend that qualified immunity shields them from liability for Biddle's arrest because they reasonably believed the arrest was supported by probable cause. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). To determine whether an official's conduct violates clearly established law requires a two-step inquiry. First, the plaintiff must show that the law was clearly established when the challenged conduct occurred. In this Circuit, we ask "whether the law was clear in relation to the specific facts confronting the public official when he or she acted." *Apostol v. Landau,* 957 F.2d 339, 341 (7th Cir.1992). Second, we evaluate the objective legal reasonableness of the defendants' conduct. We inquire whether reasonably competent officials would agree on the application of the clearly established right to a given set of facts. *Id.* at 341. *See also Henderson v. DeRobertis,* 940 F.2d 1055, 1059 (7th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992).

The defendants do not dispute that Biddle had a clearly established right in 1990 to be free from arrest without probable cause. This appeal focuses upon the second prong of the analysis. We examine the undisputed facts in the record to evaluate the objective legal reasonableness of the officers' acts.

*Apostol,* 957 F.2d at 342. In this case, then, qualified immunity shields the defendant police officers from Biddle's damage action if "a reasonable officer could have believed [Biddle's arrest] to be lawful, in light of clearly established law and the information the arresting officers possessed." *Hunter v. Bryant,* — U.S. ——, ——, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

Biddle's brief on the appropriateness of summary judgment when probable cause is at issue completely misapprehends the governing law. He asserts, "It is ... well settled that the existence of probable cause to arrest is generally a question for the trier of fact that is inappropriate for resolution by summary judgment." Appellant's Brief at 9. To the contrary, the Supreme Court recently explained, this assertion is wrong

> for two reasons. First, it routinely places the question of immunity in the hands of the jury. Immunity ordinarily should be decided by the court long before trial. Second, the court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed [long] after the fact.

*Hunter v. Bryant,* — U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). As the Eighth Circuit has explained, "[i]f a case involves a question of whether probable cause existed to support an officer's actions, the case should not be permitted to go to trial if there is *any* reasonable basis to conclude that probable cause existed." *Cross v. City of Des Moines,* 965 F.2d 629, 632 (8th Cir.1992) (citing *Hunter,* — U.S. at ——, 112 S.Ct. at 536). Consequently, if reasonable police officers would have believed that probable cause existed to arrest Biddle, Martin and Lehmann are entitled to qualified immunity from his suit.

■■■ We also note that in § 1983 actions for false arrest, probable cause need not have existed for the charge for which the plaintiff was arrested, so long as probable cause existed for arrest on a closely related charge.

> While an arresting officer's subjective knowledge of facts sufficient to constitute probable cause is central to evaluation of

the propriety of an arrest, we do not believe that the officer's view of the *legal basis* for the arrest is important. Under the principles of *Harlow v. Fitzgerald* and the fourth amendment, an objective standard applies where the parties present alternative legal justifications for an arrest. The issue is whether a reasonably competent police officer, with knowledge of the facts actually known by the arresting officer, would have concluded that probable cause existed to arrest for the offense offered as justification.

*Richardson v. Bonds,* 860 F.2d 1427, 1430–31 (7th Cir.1988). Therefore, if reasonable officers would have believed that they had probable cause to arrest Biddle for obstruction of a police officer (the offense with which he was charged), or for any related charge, his § 1983 claim must fail. The district court determined that the officers had probable cause for the obstruction charge, as well as for disorderly conduct and for a vehicular offense—allowing another to operate his van in a manner contrary to law.

As an initial matter, on these facts we believe that these crimes are sufficiently related to satisfy the requirements of *Richardson.* The charge offered by the defendants to justify the arrest was not an "*ex post facto* extrapolation*"* of the crimes which might have been charged. 860 F.2d at 1431. The justifications for arrest which the officers provide are neither "novel" nor "extravagant" and fall within the range of association approved by other courts. *See Richardson,* 860 F.2d at 1431. *See also Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (defendant yelled profanity at officers and ignored requests to move from scene of arrest) (criminal trespass charge sufficiently related to disorderly conduct justification); *Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076, 1080 (8th Cir.1990) (defendant refused to move from no-parking zone, screamed at officer, and tore up parking ticket) (intentional interference with police officer's duties charge sufficiently related to refusal to move vehicle from no-parking zone); *United States v. Rambo,* 789 F.2d 1289, 1294 (8th Cir.1986) (defendant ran through hotel hallway naked and screaming) (disorderly conduct; undesirable guest statute). These cases strike a

balance which allows the arresting officer to choose which crime she will charge without having to charge every single offense sustainable on the facts, and yet does not "open[ ] the door to the 'extrapolation' of offenses in an effort to justify a sham arrest." *Trejo v. Perez*, 693 F.2d 482, 485 (5th Cir.1982) (arrest for disorderly conduct based upon use of vulgar language in a public place in response to officer's request for identification is justifiable as violation of statute requiring persons to identify themselves to police officers [2]).

These cases illustrate that so long as probable cause existed for the obstruction charge or for any related offense, Biddle's false arrest claim must fail. Therefore, we need not consider all the possible charges Biddle's conduct might support. We believe the officers had probable cause to arrest Biddle for disorderly conduct and for allowing another person to operate his van in a manner contrary to law. Both police officers knew that the driver of the van was arrested for driving under the influence of alcohol. The basis of the entire confrontation with Biddle was Biddle's drunken, vociferous objection to the van being towed. The officers were entitled to infer that he objected so strenuously because the van was his. These two facts support a reasonable belief that Biddle was in violation of 625 ILCS 5/16–202.

■ The facts the officers possessed also were sufficient to establish probable cause to arrest for disorderly conduct. Illinois law provides that a person commits disorderly conduct when he "[d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace...." 720 ILCS 5/26–1 (formerly Ill.Rev.Stat. ch. 38, para. 26–1(a)(1)). "Disorderly conduct has never had a precise definition; the types of conduct that may be disorderly conduct 'almost defy definition.' " *Lester v. City of Chicago*, 830 F.2d 706, 714 (7th Cir.1987) (quoting *People v. Davis*, 82 Ill.2d 534, 45 Ill.Dec. 935, 937, 413 N.E.2d 413, 415 (1980)). Whether particular conduct is disorderly therefore depends not only on the con-

duct itself but also on the conduct's unreasonableness in relation to the surrounding circumstances. *Id.* Three elements are required: the defendant's conduct must (a) be unreasonable, (b) disturb or alarm another, and (c) threaten to provoke or provoke a breach of the peace. *McGaughey v. City of Chicago*, 664 F.Supp. 1131 (N.D.Ill.1987). "Arguing with a police officer, even in a loud, offensive manner, may not, by itself constitute disorderly conduct. But that does not mean that arguing with a police officer may never be disorderly conduct." *Lester*, 830 F.2d at 715. Arguing can be disorderly conduct depending on the circumstances and the argument's tendency to create public disorder. *Id.* (citing *Chicago v. Morris*, 47 Ill.2d 226, 264 N.E.2d 1 (1970)). "[T]he reasonableness of a person's behavior is necessarily tied to the facts and circumstances of the situation in which he or she is placed[, and].... an officer on the job need not have proof beyond a reasonable doubt in order to make an arrest." *McGaughey*, 664 F.Supp. at 1136.

■ Often when a citizen's argument with a police officer is at issue, the key inquiry is whether there is a clear relationship between the citizen's conduct and the threat to public order. *Id.* We believe this inquiry is central in the instant case. Certainly screaming profanities at an officer for ten minutes is not a reasonable response to the information that your vehicle is to be towed. This is particularly so when the screaming is accompanied by violent arm gestures and the argument is with a physically smaller officer on a deserted roadway at 3:00 a.m. It is also clear that such violent argument will likely disturb the officer. The only question then, is whether the officers in this case reasonably believed that Biddle's argument threatened a breach of the peace. Biddle was intoxicated and violently opposed to the towing of his van. He launched a ten-minute tirade against Martin, screaming, swearing and waving his arms. He refused to calm down and continued this performance after she called for assistance. This behavior

---

**2.** The statute was held unconstitutional on its face in another case decided after the officer arrested the plaintiff. *See Spring v. Caldwell*, 516

F.Supp. 1223 (S.D.Tex.1981), *rev'd on other grounds*, 692 F.2d 994 (5th Cir.1982). *See Trejo*, 693 F.2d at 484 (noting decision in *Spring* ).

justifies a reasonable belief that his resistance to the tow might escalate once the tow truck arrived, generating a real possibility of physical confrontation between Biddle and the tow truck driver or the police officers. We believe this relationship between Biddle's unreasonable conduct and a breach of the peace is clear enough to satisfy the requirements of probable cause.

 Given the circumstances, we believe a reasonable officer could have believed, even mistakenly, that he had probable cause to arrest Biddle on one of the charges offered in justification. *See Hunter v. Bryant*, —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (discussing qualified immunity of secret service agents who arrested individual they believed threatened President); *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986), and will accommodate reasonable errors "because officials should not err always on the side of caution because they fear being sued." *Hunter*, —— U.S. at ——, 112 S.Ct. at 537 (citations omitted). Accordingly, we find that Biddle's drunken tirade created probable cause to arrest him for disorderly conduct, and that the facts surrounding Miller's arrest created probable cause for an arrest for the improper operation of the van. Because they had probable cause for the arrest, the officers are entitled to qualified immunity on Biddle's false arrest claim.

## C. Malicious Prosecution

 Whether a malicious prosecution action may be brought under § 1983 is still an open question. In a recent opinion, we ruled that such a claim could not be brought in the absence of incarceration or other palpable consequences. *Albright v. Oliver*, 975 F.2d 343, 347 (7th Cir.1992). The Supreme Court has granted certiorari in the case. —— U.S. ——, 113 S.Ct. 1382, 122 L.Ed.2d 757 (1993). The resolution of Biddle's claims need not await the Supreme Court's decision however, because we have also ruled that "the exis-

tence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution." *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir.1989). *See also Fernandez v. Perez*, 937 F.2d 368, 371 (7th Cir. 1991). Because probable cause existed for Biddle's arrest, his malicious prosecution claim is barred.

## III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED, WITH APPELLANT TO BEAR COSTS.