**Michael FINK, Plaintiff,**

v.

**Sally GONZALEZ, and Michael McNeela, Defendants.**

No. 94 C 6102.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 8, 1996.

partment, Corporation Counsel, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Michael Fink ("Fink") brings this two count complaint against Chicago police officers Sally Gonzalez ("Gonzalez") and Michael McNeela ("McNeela"), alleging that they arrested him in violation of his Fourth Amendment rights as protected under 42 U.S.C. § 1983 and in violation of his right to be free from false arrest under Illinois state law.[1] Defendants have now filed for summary judgment, and for the reasons discussed below, we grant their motion as to count one, and decline supplemental jurisdiction over count two.

### I. Background [2]

The events leading to Fink's arrest and this lawsuit began on the morning of April 5, 1994 when Fink went to visit a friend named Michael Lemon ("Lemon") at his apartment at 700 West Bittersweet Place in Chicago, Illinois. As he described at his deposition, Fink arrived at 10:00 a.m. and spent the entire day drinking whiskey with Lemon and friends in Lemon's apartment. At approximately 7:00 p.m., Fink left the apartment alone and walked to a local bar where he continued to drink until sometime between 10:00 p.m. and midnight. At that time, Fink decided to return to 700 West Bittersweet Place. Fink Dep. at 19–25.

Fink, admittedly intoxicated, made his way back to Lemon's 10–story apartment building, entered the unlocked front door, and attempted to contact Lemon through the intercom system located in the vestibule. Due to his impaired condition, however, Fink had great difficulty entering the proper code into the intercom system and accidently rang the buzzer of another resident. Despite being yelled at by the individual he mistakenly

John Ladell Stainthorp, People's Law Offices, Chicago, IL, for plaintiff.

Arthur Mooradian, Dawn Eileen Bode, and John F. McGuire, City of Chicago, Law De-

---

**1.** Plaintiff voluntarily dismissed Defendants Douglas Wissink and Laura Wolverton as well as the third count contained in his amended complaint.

**2.** Pursuant to the Local Rules for the Northern District of Illinois, all material facts contained in movants' Rule 12(M) statement may be deemed admitted where the nonmoving party fails to controvert those statements in its Rule 12(N) statement with specific citation to the evidentiary record. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922–24 (7th Cir.1994).

dialed, Fink continued his attempt to operate the intercom in order to contact Lemon and be admitted through the locked inner door of the building. At some point in this process, Fink claims he was tackled from behind and thrown to the ground. Fink Dep. at 28–29; Pl.'s 12(N) ¶¶ 3–8.

Leslie Shenko ("Shenko"), a first floor resident of the Bittersweet building, heard a commotion in the building entrance and went to see what was happening. She opened her door, looked into the vestibule, and saw another resident, Ellis Lee ("Lee"), dressed in a security uniform standing over Fink. Upon Lee's request, Shenko then returned to her apartment and called the police. Pl.'s 12(N) ¶¶ 9–10. Chicago police officers Gonzalez and McNeela were on duty together that night and responded to a radio call for police assistance at 700 West Bittersweet Place. They arrived at the scene sometime around midnight and observed a man dressed in a security uniform standing over the prone figure of Defendant Fink. Statement of Uncontested Facts ¶¶ 2–5.

Lee, who appeared to Gonzalez and McNeela to be a security guard for the building, informed the officers that Fink had been creating a disturbance by ringing doorbells and knocking on the door of the building.[3] He further stated that he had seen Fink in the same intoxicated condition trying to get into the building earlier in the night and had himself called the police who had responded and asked Fink to leave. Defs.' 12(M) ¶¶ 18–23; Lee Aff. ¶¶ 4–9. Gonzalez and McNeela, who testified that they remembered hearing a police radio call to 700 West Bittersweet earlier that night, asked Lee if he wished to sign a complaint form against Fink, but he declined, indicating that Shenko, who was an officer of the condominium board, would be the appropriate person to file a complaint. Gonzalez Dep. at 16. The officers then approached Ms. Shenko who agreed to sign the complaint. Defs.' 12(M) ¶¶ 24–36; Shenko Dep. at 23–26.

Gonzalez and McNeela arrested Fink for criminal trespass to land and transported him to the police station for processing. Although Fink was put in the lockup until later that morning and assigned a court date, the charges against him were ultimately dismissed. Pl.'s 12(N) ¶¶ 49–51; Defs.' 12(M) ¶¶ 54–55.

In response to the events of April 5th, Fink filed the instant § 1983 and state law false arrest claims against Officers Gonzalez and McNeela, charging that they lacked probable cause to arrest him for the offense of trespass to land. Gonzalez and McNeela deny any wrongdoing, and now move for summary judgment on the grounds that: (1) they had probable cause to arrest Fink, and (2) they are entitled to qualified immunity for their actions because arresting Fink was objectively reasonable under clearly established law.

## II. Discussion

A district court properly grants summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Our role at this stage is not to weigh the evidence presented by either side, but rather, to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). As always, we draw all reasonable inferences in favor of Fink, the nonmoving party, but recognize that if the evidence is "merely colorable," summary judgment may be granted. *Id.*

Understanding the potentially determinative nature of Defendants' claim to qualified immunity, and the appropriateness of resolving questions of immunity at the earliest possible stage of litigation, we turn directly to that issue. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

 In general terms, it is well understood that qualified immunity protects gov-

---

**3.** It was determined later that Lee was not a security guard for the building at 700 West Bit-

tersweet.

ernment officials from civil liability "insofar as their conduct does not violate clearly established statutory of constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). To apply this standard, we first look to whether the right allegedly violated was clearly established when the challenged conduct occurred, and then evaluate the legal reasonableness of the defendants' conduct. *Biddle v. Martin,* 992 F.2d 673, 675 (7th Cir.1993).

In this case, there can be no dispute that Fink had a clearly established right under the Fourth Amendment to be free from arrest without probable cause. Therefore, our analysis turns on whether Gonzalez and McNeela acted objectively reasonable when they made the arrest. On this point, Fink argues that he was lawfully attempting to visit his friend, that he explicitly informed the defendants of this fact at the time of his arrest, and that based upon all the facts presented, no reasonable police officer could have concluded that Fink was guilty of criminal trespass to land.

More specifically, Fink notes that under Illinois law the offense of criminal trespass to real property is committed only when a person enters upon the land or building of another after being told by the owner or occupant that such entry is forbidden, or when that person remains upon such land or building after receiving notice to depart. 720 ILCS 5/21–3. He then argues that essential elements of the crime, including whether Fink was asked to leave, whether Fink heard the request, whether Fink refused to accede to the request, and whether Fink was privilege to ignore the request because he had an invitation, had not been clearly demonstrated at the time of his arrest.

For purposes of qualified immunity, however, we need not determine whether Fink was actually guilty of criminal trespass, or even if probable cause to arrest him for that crime actually existed. Rather, we must only ask whether an officer in defendants' position could have reasonably, even if mistakenly, believed that he or she had probable cause to make the arrest. *Anderson v.*

*Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Maltby v. Winston,* 36 F.3d 548, 555 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2576, 132 L.Ed.2d 827 (1995); *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988) (only if no reasonable officer could have mistakenly believed that he had probable cause to arrest is immunity lost).

■ Here, Gonzalez and McNeela were presented with more than enough facts to support a reasonable belief that they had probable cause to arrest Fink for criminal trespass to land. When the officers arrived at 700 West Bittersweet they saw Lee, who they believed was a building security officer, standing over Fink, and were informed by Lee that Fink was intoxicated, refused to leave, and had been attempting to gain access to the building for the second time that evening. Lee further stated that the police had been summoned earlier that night and had at that time asked Fink to leave the property. Supplementing Lee's oral representations, it is undisputed that Ms. Shenko, a member of the condominium board, signed a complaint against Fink and understood that it was to be used for his arrest. Defs.' 12(M) ¶¶ 27–31; Shenko Dep. at 23–26.

Fink had been drinking alcohol since ten o'clock in the morning and was admittedly intoxicated to the extent that he could not properly operate the building's intercom system. Once he was placed on the ground by Lee (which he states was before the officers even arrived), he does not recall hearing "anything distinguishable," or even remember who handcuffed him. Fink Dep. at 40. Gonzalez and McNeela, in contrast, have stated they remember that they could not understand anything Fink said, that he smelled of alcohol, and that he was acting highly intoxicated. McNeela Dep. at 33; Gonzalez Dep. at 29.

Under these circumstances, we cannot say that it would be unreasonable for police officers to discount any statements Fink may have made, place greater weight on their observations and the account of witnesses, and arrest Fink. As the Seventh Circuit has held, "[i]f policemen arrest a person on the basis of a private citizen's complaint that if

true would justify the arrest, and they reasonably believe it is true, they cannot be held liable for a violation of the Constitution merely because it later turns out that the complaint was unfounded." *McKinney v. George,* 726 F.2d 1183, 1187 (7th Cir.1984). Qualified immunity has come to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs,* 475 U.S. 335, 341 (1986), and we therefore do not hesitate to find that Officers Gonzalez and McNeela are entitled to its protection in this case.

Defendants raise an additional ground to support their claim to qualified immunity, which we briefly address for the sake of thoroughness and because we believe it has merit. Gonzalez and McNeela assert that beyond having a reasonable basis for the charge of criminal trespass, they cannot be liable under § 1983 because they also could have reasonably believed that they had probable cause to arrest Fink for disorderly conduct in violation of Chicago Municipal Code § 8–4–010(g).[4] Under the facts of this case, we agree.

In actions for false arrest under § 1983, the Seventh Circuit has recognized that "probable cause need not have existed for the charge for which the plaintiff was arrested, so long as probable cause existed for arrest on a closely related charge." *Biddle,* 992 F.2d at 676. Because we apply an objective standard when reviewing the legal basis upon which an individual is arrested, an alternative legal justification for the arrest can be presented. As long as the alternative charge is not a bad faith attempt to justify a sham arrest, or for a completely unrelated crime, the proper inquiry becomes whether a reasonable officer would have believed that he or she had probable cause to make an arrest for the offense offered as justification. *Richardson v. Bonds,* 860 F.2d 1427, 1430 (7th Cir.1988); *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990).

Based upon the facts described above, and the fact that the charge of disorderly conduct is reasonably related to that of criminal trespass, we find that a reasonable police officer would have believed that there was probable cause to arrest Fink on the charge of disorderly conduct. Accordingly, we conclude that Gonzalez and McNeela are entitled to qualified immunity from count one of plaintiff's complaint.[5]

Finally, we observe that because we have dismissed the only count over which we had original jurisdiction, we need not exercise supplement jurisdiction over plaintiff's state law claim in count two. 28 U.S.C. § 1367(c)(3). Accordingly, we decline to exercise jurisdiction over count two, and dismiss that count without prejudice.

### III. CONCLUSION

For the reasons set forth above, we hold that Officers Gonzalez and McNeela are entitled to qualified immunity from plaintiff's § 1983 claim and therefore grant summary judgement in their favor on count one of plaintiff's complaint. In addition, we decline to exercise supplemental jurisdiction over plaintiff's pendent state law claim for false arrest, and dismiss count two. It is so ordered.

---

**4.** Chicago Municipal Code § 8–4–010(g) provides that: "A person commits disorderly conduct when he knowingly appears in any public place manifestly under the influence of alcohol, narcotics or other drug, not therapeutically administered, to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity."

**5.** To the extent that the plaintiff attempted to assert in count one a § 1983 claim grounded on malicious prosecution, *see* Amended Compl. ¶ 23, we note that Fink has entirely failed to actually present this theory. The complaint labels count one as a claim for *"unreasonable arrest"* (emphasis added), and Fink makes no mention of malicious prosecution as a separate theory in his response brief. Instead, he characterizes his claims as for "false arrest." Pl.'s Resp. at 1. Because the putative claim was never presented, summary judgment on the entirety of count one is appropriate.