Peggy KELLEY, Plaintiff–Appellant,

v.

Mark MYLER, Gene Patrick, Ralph Bell and Hurricane Foods, Inc., Defendants–Appellees.

No. 97–4093.

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1998.

Decided July 13, 1998.

Patrick Stern (argued), Indianapolis, IN, for Plaintiff–Appellant.

Daniel P. Byron, McHale, Cook & Welch, Indianapolis, IN, Dale R. Simmons, Office of the Corporation Counsel, City Counsel Legal Division, Indianapolis, IN, Lawrence J. Carcare, II (argued), Office of the Corporation Counsel, City of Indianapolis, Indianapolis, IN, for Defendant–Appellee Myler and Patrick.

Stephanie L. Valadez (argued), Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for Defendant–Appellee Bell.

Before CUMMINGS, MANION and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

On September 20, 1996, plaintiff Peggy Kelley filed a civil rights complaint under Title 42 U.S.C. § 1983 against Marion County Deputy Sheriffs Mark Myler and Gene Patrick, Ralph Bell, a private citizen allegedly acting in concert with the officers, and Hurricane Foods, Inc., Bell's employer. She alleged that her civil rights were violated when she was arrested and prosecuted for trespass while exercising her First Amendment right to free speech. In granting summary judgment for defendants, the district court concluded that plaintiff's action was barred by the statute of limitations. In any event, the court found that plaintiff's unlawful arrest claim was without merit because the officers had probable cause to arrest her. The court also found that because the arrest was reasonable, the officers did not violate any clearly established constitutional rights, and thus were entitled to qualified immunity for their actions. Finally, the court concluded that the defendants were entitled to summary judgment on plaintiff's conspiracy and malicious prosecution claims. We affirm.

## I. Facts

On April 4, 1994, Kelley went to a Wendy's restaurant operated by Hurricane Foods in Indianapolis, Indiana, to protest that Wendy's had employed an individual who allegedly had molested her daughter. She was passing out leaflets which described the misconduct of the Wendy's employee who Kelley believed had impregnated her daughter. Wendy's employee Ralph Bell called the Marion County Sheriff's Department. When Officer Jim Anderson arrived, he told Kelley that Bell wanted her to leave. After informing him that she was on a public easement, Kelley was told that she was within her rights as long as she did not protest on Wendy's property and did not disturb traffic. Kelley returned later that day to hand out more leaflets. She did this by stopping cars entering and exiting the Wendy's parking lot and by walking in a grassy area in front of the restaurant and adjacent to the parking

lot. Bell requested that she leave. After she refused, Bell again called the police. When officers Myler and Patrick arrived at the scene, Bell described the situation, indicated that this was the second time on that date that Kelley had been there, and told them that he had asked her to leave the property. Bell had no further communication with the officers.

Myler and Patrick then observed Kelley walking around the Wendy's parking lot with a sign attached to her body describing the child molesting incident and stopping cars in order to hand out leaflets. They informed Kelly that Bell requested that she leave. Kelley refused, claiming that she was on an easement for the use of the general public. Myler told her that she could be arrested for trespassing and repeatedly asked her to leave which she refused to do. Myler and Patrick then arrested Kelley for criminal trespass and for resisting, obstructing or interfering with a law enforcement officer by force. On July 17, 1995, Kelley was found not guilty of the charges in the criminal action, having been in fact on a public right-of-way.

On September 20, 1996, Kelley filed her complaint. Count I alleged that defendants Myler, Patrick, and Bell conspired to violate her civil rights and that she was arrested without probable cause and based on false information provided by Bell. She claimed that had Myler or Patrick done a reasonable investigation they would have realized that she was not on defendant Wendy's property but rather on an easement for the use of the general public, as she had indicated to them. Count II alleged that Myler and Patrick violated her rights under the Fourth and Fourteenth Amendments and asserted that because they acted with malice, she was entitled to punitive damages. In Count III, Kelley claimed that Hurricane Foods was responsible for the misconduct of Bell.[1] Count IV alleged that defendants' conduct violated Indiana state law and that such conduct amounted to malicious prosecution of Kelley.

---

1. The district court dismissed plaintiff's complaint against Hurricane Foods. Plaintiff filed a motion to dismiss her appeal against Hurricane Foods on February 2, 1998, which the district court granted.

The district court granted defendants' motions for summary judgment, and plaintiff appeals. For the following reasons, we affirm.

## II. Analysis

■ We review a district court's granting of summary judgment *de novo*, drawing all reasonable inferences from the record in the light most favorable to the non-moving party. *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1243 (7th Cir.1994), certiorari denied, 513 U.S. 1128, 115 S.Ct. 937, 130 L.Ed.2d 882.

### A. Statute of Limitations

■ Kelley's false arrest claim is time barred because it was not brought within two years of the date of her arrest. She was arrested on April 4, 1994, and did not file her complaint until September 20, 1996.

This Court has held that the two-year Indiana statute of limitations for personal injuries applies to § 1983 claims, and that a cause of action under § 1983 for improper arrest accrues at the time of the arrest. *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir.1995) (per curiam); *Gonzalez v. Entress*, 133 F.3d 551, 553 (7th Cir.1998); see also *Day v. Morgenthau*, 909 F.2d 75, 79 (2d Cir.1990) (as amended on rehearing), certiorari denied, 506 U.S. 821, 113 S.Ct. 71, 121 L.Ed.2d 37 (day of alleged unlawful arrest was the day of accrual of plaintiff's claims contrary to plaintiff's contention that his claims accrued on the day of his arraignment). According to Kelley, however, *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383, postpones the accrual of the claim until July 17, 1995, when Kelley was found not guilty of the charges against her. We disagree. The Supreme Court in Heck held that a "damages claim that 'necessarily demonstrates the invalidity of [a] conviction' may not be brought while the conviction stands." *Gonzalez*, 133 F.3d at 553 (quoting *Heck*, 512 U.S. at 481–482, 114 S.Ct. 2364). In commenting on *Heck* in *Gonzalez*, we noted two things: first, that "a claim based on an un-

lawful search or arrest may be brought immediately, because a violation of the fourth amendment does not necessarily impugn the validity of a conviction—the evidence may be properly admitted anyway, or it may be excluded and the defendant convicted on other evidence" and second, that "a claim of damages based on 'the "injury" of being convicted' is impermissible until the conviction has been overturned." *Id.* We observed that "[a]ll Heck does is knock out one element of damages, the injury from wrongful conviction, while the conviction stands." *Id.* at 554. Thus we concluded that because a claim asserting a violation of the fourth amendment does not "necessarily demonstrate[ ] the invalidity of [a] conviction," such a claim accrues at the time of the unlawful search or seizure.[2] *Id.* at 553; see also *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir.1996), certiorari denied, — U.S. ——, 117 S.Ct. 952, 136 L.Ed.2d 840 (holding that § 1983 unlawful arrest claim accrued on day of arrest because "one can have a successful wrongful arrest claim and still have a perfectly valid conviction"); *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997), certiorari denied, — U.S. ——, 118 S.Ct. 1515, 140 L.Ed.2d 668 (statute of limitations began to run when plaintiff "knew or should have known that his constitutional rights had been violated—the date of his arrest"); *Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir.1996), certiorari denied, — U.S. ——, 117 S.Ct. 104, 136 L.Ed.2d 58; *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir.1995) ("[i]t is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest").

Because Kelley's arrest occurred on April 4, 1994, and Kelley did not file her complaint until September 20, 1996, more than five months after the expiration of the statute of limitations, her claim is time barred, and summary judgment was properly entered against her.

---

**2.** In reaching this conclusion, we relied on the following example: "Suppose a person says something like 'I was arrested without probable cause and spent a night in jail until my wife came up with bail money.' That injury is compensable whether or not the person is later convicted—indeed, whether or not he is later prosecuted." *Gonzalez*, 133 F.3d at 553.

## B. Probable Cause and Qualified Immunity

█ Even if the statute of limitations had not run on Kelley's claim, summary judgment still would be appropriate because the officers had probable cause to arrest Kelley for trespassing and, in any event, were entitled to qualified immunity. We review a district court's finding of probable cause *de novo*, although the district court's findings of fact are reviewed for clear error. *United States v. Osborn*, 120 F.3d 59, 62 (7th Cir. 1997), certiorari denied, ⎯ U.S. ⎯, 118 S.Ct. 636, 139 L.Ed.2d 615.

█ An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause. *Jones by Jones v. Webb*, 45 F.3d 178, 181 (7th Cir.1995). Law enforcement officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Sheik–Abdi*, 37 F.3d at 1246; see also *Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. This fact-intensive, on-the-spot determination of probable cause often involves an exercise of judgment, which " 'turn[s] on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.' " *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527). Therefore, courts evaluate probable cause "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer-seeing what he saw, hearing what he heard." *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir.1992). The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. "If so, the arrest is lawful even if the belief would have been mistaken." *Id.* at 1057–1058. Thus probable cause has been described as a zone within which reasonable mistakes will be excused. *Sheik–Abdi*, 37 F.3d at 1246.

We agree with the district court's finding that a prudent officer would have believed that probable cause existed to arrest Kelley for criminal trespass. Under Indiana law, trespass is committed when

> A person who:
>
> (1) not having a contractual interest in the property, knowingly or intentionally enters the real property of another person after having been denied entry by the other person or that person's agent;
>
> (2) not having a contractual interest in the property, knowingly or intentionally refuses to leave the property of another person after having been asked to leave by the other person or that person's agent
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> commits criminal trespass, a Class A misdemeanor.

Ind.Code § 35–43–2–2(a).

The facts and circumstances within Myler's and Patrick's knowledge were sufficient to justify their belief that Kelley had committed, or was committing, the offense of trespass. The officers were informed by Bell, the manager of Wendy's, that Kelley was on Wendy's property and that he wanted Kelley to leave. The officers then saw Kelley in the parking lot and on the adjacent grassy area in front of Wendy's. They asked Kelley to leave the premises several times, but she refused. Based on these facts, they had probable cause to arrest her for criminal trespassing.

█ Kelley contends that the officers did not have probable cause because they should not have made an arrest without checking official records for the location of the property boundaries. She claims that she told the officers that she was on a right-of-way and that they had a duty to investigate before arresting her. We refuse to add this extra requirement to the probable cause determination. We have held that if an officer has established cause on every element of a crime, he need not continue investigating in order to test the suspect's claim of innocence. See *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 437–442, certiorari denied, 481 U.S.

1028, 107 S.Ct. 1952, 95 L.Ed.2d 525. The inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation. *Id.* at 439.

The facts of this case are similar to *Bodzin v. City of Dallas,* 768 F.2d 722 (5th Cir.1985). In *Bodzin,* the court held that officers had probable cause to arrest the plaintiff for trespass. *Id.* at 723. In an effort to gather signatures on petitions, plaintiff set up a chair, card table and signs on a sidewalk and grassy area adjoining the parking lot of a shopping center. The manager of a grocery store in the shopping center demanded that plaintiff leave. Plaintiff refused, claiming that he was exercising his constitutional rights on public property. The manager then called the police and informed them that plaintiff was on the store's property and refused to leave. When the officers arrived, they observed plaintiff in an area that the manager said was private property and informed him that the manager wanted him to leave, but he refused. The officers then arrested him for criminal trespass. The charges were later dropped. *Id.* at 723–724.

Plaintiff sued under § 1983. He produced a survey indicating that he had been located entirely on a public right-of-way. Like Kelley, the plaintiff in *Bodzin* contended that there was no probable cause because the officers could not have reasonably believed him to be trespassing without first ascertaining the location of the property line from official sources. *Id.* at 725. However, the court declined to engraft this additional requirement into the probable cause analysis for trespassing, stating

> Certainly we cannot expect our police officers to carry surveying equipment and a Decennial Digest on patrol; they cannot be held to a title-searcher's knowledge of metes and bounds or a legal scholar's expertise in constitutional law.

*Id.* (quoting *Saldana v. Garza,* 684 F.2d 1159, 1165 (5th Cir.1982), certiorari denied, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481). The court affirmed the district court's decision to grant summary judgment in favor of defendants, concluding that the officers had probable cause based on the following facts:

> When the officers arrived on the scene, the manager told them that [plaintiff] was on Skagg's property, had been asked to leave, and had not done so. The officers observed [plaintiff] on a site that the manager said was private property, and heard [plaintiff] refuse to leave after being told that he was not welcome. [The officers] then had probable cause to believe that [p]laintiff had committed all the elements of criminal trespass in their presence.

*Id.* at 724.

■ As in *Bodzin,* the officers here had probable cause to believe that Kelley had committed, or was committing, the offense of trespass. The officers did not have to first ascertain the location of the property line from official sources in order to determine whether she was in fact on private property. It was sufficient that the officers were informed by Bell that Kelley was on Wendy's property and that he wanted Kelley to leave. We have held that when an officer receives information from a third party whom the officer has reason to believe is telling the truth, the officer has probable cause. *Gramenos,* 797 F.2d at 439 (quoting *Daniels v. United States,* 393 F.2d 359, 361 (D.C.Cir. 1968)). The officers then observed Kelley in the parking lot and on the adjacent grassy area in front of Wendy's. They asked Kelley several times to leave the premises, but she refused. Based on these facts, they had probable cause to arrest her for criminal trespass. The fact that Kelley was not actually convicted of trespass does not mean that there was not probable cause for her arrest. As we have noted, "[p]robable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters." *Id.*

■ Kelley also argues that even if the officers had probable cause to arrest her for criminal trespass, they did not have probable cause to arrest her for resisting law enforcement. However, recognizing that probable cause is a defense to a § 1983 claim based on an alleged false arrest, we have stated that even if probable cause does not exist for the

crime charged, proof of probable cause to arrest the plaintiff on a closely related charge is also a defense. *Biddle v. Martin,* 992 F.2d 673, 676 (7th Cir.1993); see *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990) (plaintiff claimed defendants lacked probable cause to arrest him for criminal trespass; court held that it need not address that issue because defendants had probable cause to arrest plaintiff for disorderly conduct, and criminal trespass charge was sufficiently related to disorderly conduct justification).

 Even if probable cause had not existed, the district court correctly noted that, in any event, Myler and Patrick would be entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Biddle,* 992 F.2d at 675 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396). Qualified immunity is intended to shield from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271.

 Whether a defendant is entitled to a qualified immunity defense depends on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law. In determining whether an official is entitled to qualified immunity, we engage in a two-part inquiry. First, we must determine whether the law was clearly established at the time of the alleged violation, asking " 'whether the law was clear in relation to the specific facts confronting the public official when he or she acted.' " *Biddle,* 992 F.2d at 675 (quoting *Apostol v. Landau,* 957 F.2d 339, 341 (7th Cir.1992)). Second, we analyze the objective reasonableness of the defendant's conduct, asking "whether reasonably competent officials would agree on the application of the clearly established right to a given set of facts." *Id.*

 The defendants do not dispute that Kelley had a clearly established right not to be arrested without probable cause. Thus we must evaluate the objective reasonableness of the officers' acts. "With an unlawful arrest claim in a § 1983 action when a defense of qualified immunity has been raised, we will review to determine if the officer actually had probable cause, or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey v. Staszak,* 148 F.3d 719, 725 (7th Cir.1998). If reasonable officers would have believed that probable cause existed to arrest Kelley, the officers are entitled to qualified immunity.

Recognizing the overlap of the issue of immunity and the merits of Kelley's unlawful arrest claim, *Maxwell,* 998 F.2d at 435, we observe that the question that is dispositive of both immunity and the merits—the issue of probable cause—was decided against Kelley. Because a reasonable officer could have believed that Kelley had committed the offense of trespass, the officers here were not acting contrary to clearly established law when they arrested her and thus are entitled to qualified immunity. Kelley has not cited any authority which establishes that the officers violated clearly established law based on the facts of this case.

Therefore, the officers' decision to arrest Kelley for trespass "easily falls within the zone of probable cause [ ]and even more easily into the zone of qualified immunity[ ]," *Sheik–Abdi,* 37 F.3d at 1247–1248, and the district court properly granted summary judgment in favor of defendants.

## C. Conspiracy

 Kelley claims that Bell conspired with officers Myler and Patrick to deprive her of her civil rights. To state a § 1983 claim against an individual, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States and that the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155–156, 98 S.Ct. 1729, 56 L.Ed.2d 185. While a private citizen may act under

color of state law where that person willfully participates or conspires in joint activity with the State or its agents, *Cunningham v. Southlake Center for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir.1991), Kelley did not demonstrate that the state officials and private individual reached an understanding or agreement to deprive her of her constitutional rights and thus failed to support her charge that Bell, Myler and Patrick conspired against her. *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir.1985).

As we have stated, "[a] party may not cry 'conspiracy' and throw himself on the jury's mercy." *Gramenos*, 797 F.2d at 436; see also *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir.1989), certiorari denied, 493 U.S. 1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (" 'mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy") (citation omitted). Kelley presented no evidence showing that Bell and the officers reached an agreement to deprive her of her constitutional rights. Bell called the police when Kelley refused to leave the property after being asked to do so and then described the situation to the officers; he had no further communication with the officers. Such evidence does not support her charge that a conspiracy existed to arrest her in violation of her civil rights, and thus Kelley failed to establish that Bell's actions were "under color of state law."

### D. Malicious prosecution

Likewise, Kelley's malicious prosecution claim against Bell cannot survive a motion for summary judgment. To demonstrate malicious prosecution in Indiana, a plaintiff must, among other things, establish that the defendant "instituted or caused to be instituted a prosecution against the plaintiff." *Conwell v. Beatty*, 667 N.E.2d 768, 778 (Ind. Ct.App.1996). Here, the Marion County Prosecutor, not Bell, instituted the prosecution against Kelley for criminal trespass. There is no evidence that Bell instituted or caused to be instituted the prosecution against Kelley, and thus summary judgment in favor of Bell is appropriate on Kelley's malicious prosecution claim.

### III. Conclusion

We affirm the district court's decision granting summary judgment. Because Kelley did not file suit within two years of the date of her arrest, her claim is time barred. Even if her claim was allowed to proceed, the officers had probable cause to arrest her for criminal trespass so that no constitutional violation arose. In any event, the officers are entitled to qualified immunity and thus summary judgment in favor of defendants is appropriate. Finally, Kelley failed to allege sufficient facts to support her conspiracy and malicious prosecution claims against Bell.