**Marcia DuFOUR–DOWELL,
et al., Plaintiffs,**

**v.**

**Stephen W. COGGER, et al., Defendants.**

**No. 95 C 4556.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 27, 1997.

**1110**

Amy Lynn Silvestri, Joseph Gerard McGraw, Joseph G. McGraw, Ltd., Rockford, IL, for plaintiffs.

Francis P. Cuisinier, Russell W. Hartigan, Patrick Halpin O'Connor, James Patrick Newman, Russell W. Hartigan & Associates, Chicago, IL, for Stephen W. Cogger, The Village of Hinsdale.

Thomas F. Downing, Ellen L. Champagne, DuPage County States Atty's Office, Wheaton, IL, for Rick Morgan.

### MEMORANDUM OPINION AND ORDER

HART, District Judge.

The plaintiffs in this case are Marcia DuFour–Dowell, her husband Paul Dowell, and other relatives of these two plaintiffs who were all minors at the time this case was filed.[1] Plaintiffs Yvonne DuFour and John DuFour are children of DuFour–Dowell. Plaintiff Paulette Dowell is the daughter of DuFour–Dowell and Dowell. Plaintiff Ian Kirk is the nephew of DuFour–Dowell.

Named as defendants in this case were Stephen Cogger and Robert O'Malley, Village of Hinsdale police officers.[2] The Village of Hinsdale was also named as a defendant. Rick Morgan, a DuPage County deputy sheriff, was named as a defendant in his individual and official capacities. The County of DuPage was also named as a defendant. The claims against O'Malley and the County of DuPage were subsequently dismissed. Plaintiff presently seeks to amend his complaint to add DuPage County Sheriff Richard Doria in his individual and official capacities.[3] The amendment would also update matters in that Yvonne and Ian are now of age and may each bring claims in her or his own name.

The allegations of plaintiffs' complaints center around an incident that occurred on August 19, 1994. That incident was precipitated by an occurrence on August 11, 1994. On August 11, 1994, outside plaintiffs' home in Hinsdale, Cogger attempted to arrest Yvonne and Ian for curfew violations. DuFour–Dowell instructed Yvonne and Ian to go inside the house. Cogger had issued a citation to another person who had been in a car with Yvonne and Ian, but left without arresting or citing Yvonne or Ian. Cogger, however, did subsequently swear out a complaint against DuFour–Dowell for committing the misdemeanor of obstructing a police officer in violation of 720 ILCS 5/31–1.

Approximately 12:30 a.m. on August 19, Cogger and Morgan arrived at DuFour–Dowell's residence to attempt to serve the arrest warrant that had been issued. No attempt was made to serve the warrant earlier in the day or to inquire as to whether DuFour–Dowell would voluntarily surrender at the police station. Plaintiffs claim that excessive force was employed in arresting DuFour–Dowell. It is also claimed that

1. Marcia DuFour–Dowell will be referred to as "DuFour–Dowell" and Paul Dowell will be referred to as "Dowell." The other four plaintiffs will be referred to by their first names. All the claims of the minors were brought in the name of DuFour–Dowell as parent and next friend, except for Ian for whom it was stated DuFour–Dowell was his legal guardian.

2. They were sued in both their individual and official capacities. However, since the Village of Hinsdale is also named as a defendant, suing the police officers in their official capacity was redundant.

3. Subsequent to the filing of the motion for leave to amend the complaint, Sheriff Doria was replaced by John Zaruba. In any event, naming Doria in his official capacity is redundant of naming Morgan in his official capacity.

Yvonne and Paulette were assaulted by Morgan. Dowell's, John's, and Ian's claims are based on witnessing the assaults upon the other plaintiffs. It is also claimed that Yvonne was temporarily restrained. Only DuFour–Dowell was formally arrested. In addition to the obstruction charge based on the August 11 incident, DuFour–Dowell was charged with committing battery and resisting a police officer during the August 19 incident. The obstruction charge was subsequently dismissed and DuFour–Dowell was found not guilty of battery. She was found guilty of resisting arrest.

Presently pending are plaintiffs' motion to amend their complaint and defendants' motions for summary judgment. Also pending are various motions to supplement, amend, or strike briefs or supporting pleadings.[4] The motion to amend will be considered first.

Discovery in this case was to close on May 11, 1996. However, due to numerous discovery disputes that continued beyond that date, discovery was not substantially completed until September 1996, with some discovery also occurring in October. On September 11, 1996, submission of the final pretrial order was set for October 17, 1996. On October 3, the pretrial order submission date was reset to October 24. The parties were informed the pretrial order requirement would be postponed if either side filed a fully supported summary judgment motion by the deadline for the pretrial order. On October 24, defendants presented their motions for summary judgment and plaintiffs moved to amend their complaint.

■ The proposed amended complaint drops certain counts and clarifies the nature of other counts, particularly in clarifying against whom particular claims are made. It adds some additional factual allegations, but does not change the nature of the claims. The only substantive addition appears to be the adding of Doria as a defendant in his individual capacity. The claims against Doria in his individual capacity, however, are based on his personal participation in promulgating official policy or custom. Since that was already an issue as to the official capacity claim against Morgan, adding Doria as a defendant would not require additional discovery. Moreover, to any extent that Doria's personal participation in the formation of policy was not adequately investigated in discovery, it is plaintiffs who are without information; Doria does not need discovery into his own conduct. No meritorious basis is shown for denying leave to amend based on undue prejudice to any defendant. The only issue is whether adding a claim against Doria in October 1996, more than two years after the underlying incidents, is beyond the statute of limitations and therefore a futile gesture. The claims against Doria are pursuant to 42 U.S.C. § 1983, which has a two-year statute of limitations. *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 952, 136 L.Ed.2d 840 (1997). Plaintiffs contend the claims against Doria relate back to the filing of the original complaint.[5] *See* Fed.R.Civ.P. 15(c).

■ The original complaint named Morgan in his official capacity, which is a claim against the DuPage County Sheriff in his official capacity. Therefore, Doria was in this case from the beginning and he does not dispute that he had notice of the suit from the beginning. The only question is whether adding claims against Doria in his individual capacity relate back. The Seventh Circuit has held that substituting for or adding to official capacity claims with individual capacity claims may relate back. *See Woods v. Indiana University–Purdue University at Indianapolis*, 996 F.2d 880 (7th Cir.1993); *Hill v. Shelander*, 924 F.2d 1370 (7th Cir.

---

4. The proceedings in this case have been marked by unprofessional and extraordinary contentiousness between the parties resulting in excessive disputes and excessive motions and briefs.

5. Plaintiffs do not dispute that the statute of limitations had expired at the time leave to file the amended complaint was first sought. However, if *Heck v. Humphrey*, 512 U.S. 477, 114

S.Ct. 2364, 129 L.Ed.2d 383 (1994), delayed the accrual of any claim, the limitation period would not have expired on those claims until two years after the related criminal proceedings were resolved. *Cf. Antonelli v. Foster*, 104 F.3d 899 (7th Cir.1997); *Simpson v. Rowan*, 73 F.3d 134, 136 & n. 4 (7th Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 104, 136 L.Ed.2d 58 (1996).

1991). *See also Kirk v. Cronvich,* 629 F.2d 404 (5th Cir.1980) (cited favorably in *Woods & Hill*); *Household Commercial Financial Services, Inc. v. Trump,* 863 F.Supp. 735, 741–42 (N.D.Ill.1994). This rule may be applied even when the original complaint contained only official capacity claims and misnamed the government entity. *See Kirk, supra. See also Woods,* 996 F.2d at 888 n. 12. Here, Doria had adequate notice of the suit and was not in any way prejudiced by the earlier misnomer. Leave to file the amended complaint will be granted.[6]

The counts of the amended complaint are labeled as follows. (I) DuFour–Dowell's § 1983 claim against Cogger and Morgan [7] for false arrest and excessive force. (II) DuFour–Dowell's § 1983 claim against Cogger for malicious prosecution of the obstructing a police officer charge. (III) DuFour–Dowell's § 1983 claim against Morgan for malicious prosecution of the battery charge. (IV) DuFour–Dowell's supplemental state law claim against Cogger and Morgan for false arrest. (V) DuFour–Dowell's supplemental state law claim against Cogger and Morgan for intentional infliction of emotional distress. (VI) Dowell's supplemental state law claim against Cogger and Morgan for intentional infliction of emotional distress. (VII) Yvonne's § 1983 claim against Morgan for excessive force. (VIII) Yvonne's supplemental state law claim against Morgan for false imprisonment and false arrest. (IX) Yvonne's supplemental state law claim against Morgan for intentional infliction of emotional distress based on Morgan's alleged battery of her. (X) Yvonne's supplemental state law claim against Cogger and Morgan for intentional infliction of emotional distress based on witnessing defendants' conduct toward DuFour–Dowell. (XI) John's supplemental state law claim against Cogger and Morgan for intentional infliction of emotional distress. (XII) Paulette's supplemental state law claim against Morgan for intentional infliction of emotional distress

based on Morgan's alleged assault of her. (XIII) Paulette's supplemental state law claim against Cogger and Morgan for intentional infliction of emotional distress based on witnessing defendants' conduct toward DuFour–Dowell. (XIV) Ian's supplemental state law claim against Cogger and Morgan for intentional infliction of emotional distress. (XV) DuFour–Dowell's supplemental state law claim against Cogger and Morgan for assault and battery. (XVI) Yvonne's supplemental state law claim against Morgan for assault and battery. (XVII) Paulette's supplemental state law claim against Morgan for assault and battery. (XVIII) DuFour–Dowell's § 1983 claim against the Village of Hinsdale based on Cogger's conduct being pursuant to a custom or policy of failing to adequately discipline and train police officers. (XIX) DuFour–Dowell's § 1983 claim against Sheriff Doria in his individual and official capacities based on Morgan's conduct being pursuant to a custom or policy of failing to adequately discipline and train police officers. (XX) Yvonne's § 1983 claim against Sheriff Doria in his individual and official capacities based on Morgan's conduct being pursuant to a custom or policy of failing to adequately discipline and train police officers.

Before turning to the merits of the summary judgment motions, the various motions to supplement and strike will be addressed. After plaintiffs had answered the motions for summary judgment, defendants Cogger and Hinsdale moved to supplement their Local Rule 12(M) Statement, allegedly to make it more clear as to what facts were undisputed. That, however, would require reopening the briefing and permitting plaintiffs to file a new Rule 12(N) Statement. This motion to supplement [206] will be denied. Defendants were not precluded from responding to plaintiffs' 12(N) Statement either within their reply brief or by filing a separate pleading responding paragraph-by-paragraph to plaintiffs' 12(N) Statement. Construed narrowly,

---

**6.** In any event, as is discussed below, the claims against Doria will be dismissed on summary judgment.

**7.** Since Counts XVIII through XX specifically allege a custom or policy and are against Hins-

dale and the Sheriff, the various counts labeled as § 1983 claims against Cogger and/or Morgan are construed as being against each of those defendants in his individual capacity only.

Local Rule 12(M) only provides for a reply to the nonmovant's statement of additional facts, that is, the Local Rule 12(N)(3)(b) Statement.[8] However, also replying to the nonmovant's Local Rule 12(N)(3)(a) Statement is certainly well within the spirit of Rules 12(M) and 12(N). Plaintiffs' motions [212 & 213] to strike defendants' replies to the Rule 12(N)(3)(a) Statement will be denied.

Morgan also moves to supplement his Rule 12(M) Statement [207]. Morgan, however, primarily seeks to correct citations to the record and to specifically incorporate into his Rule 12(M) Statement facts already asserted in his brief and/or in Cogger's and Hinsdale's Rule 12(M) Statement. Morgan does not seek to add any facts for which plaintiffs have not had the opportunity to respond. This motion will be granted.[9]

Defendants also filed motions to supplement the record [220] and supplement their briefs [222]. These motions seek to cite two cases decided after the initial briefing was completed. Those motions will both be granted.

Last, plaintiffs move to strike parts of defendants' reply briefs [211] on the ground that issues are improperly raised for the first time in the replies. To the extent any arguments are improperly raised for the first time in the replies, no relief will be granted based on any waived arguments. However, briefs will not be stricken. This motion to strike will be granted in part and denied in part.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Oxman v. WLS-TV*, 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec v. Cities Service Co.*, 844 F.2d 470, 471 (7th Cir.1988). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Id.* at 473. The nonmovant, however, must make a showing sufficient to establish any essential element for which she or he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Id.* at 324, 106 S.Ct. at 2553. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Covalt v. Carey Canada, Inc.*, 950 F.2d 481, 485 (7th Cir.1991); *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 476–77 (7th Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *id.* at 325, 106 S.Ct. at 2554 ("the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the nonmoving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions

---

8. The last paragraph of Local Rule 12(M) provides: "If additional material facts are submitted by the opposing party pursuant to section N of this rule, the moving party may submit a concise reply in the form prescribed in section N for a response. All material facts set forth in the statement filed pursuant to section N(3)(b) will be deemed admitted unless controverted by the statement of the moving party."

9. Under the mistaken impression that his original motion to supplement had not been properly filed, Morgan sought to file it by moving for clarification and other relief [217]. Since that motion is a duplicate of motion [207], motion [217] will be denied without prejudice.

and designate specific facts which establish that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

*Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992).

The federal claims will be considered first. Those are DuFour–Dowell's § 1983 claims for false arrest (Count I), excessive force (Count I), and malicious prosecution (Counts II and III); Yvonne's § 1983 claim for excessive force (Count VII); and these same claims as against the respective municipalities and Doria (Counts XVIII through XX).

■ DuFour–Dowell contends Cogger and Morgan lacked probable cause to arrest her for obstructing a police officer and battery. She does not dispute that they had probable cause to arrest her for resisting arrest.[10] The existence of probable cause is to be determined objectively based on the information known by the arresting officer. *Calusinski v. Kruger,* 24 F.3d 931, 935 (7th Cir.1994). "[P]robable cause need not have existed for the charge for which the plaintiff was arrested, so long as probable cause existed on a closely related charge." *Biddle v. Martin,* 992 F.2d 673, 676 (7th Cir.1993). *Accord Jones v. Watson,* 106 F.3d 774, 780 n. 10 (7th Cir.1997); *Richardson v. Bonds,* 860 F.2d 1427, 1430–31 (7th Cir.1988); *Nielsen v. Village of Lake in the Hills,* 948 F.Supp. 786, 792 n. 6 (N.D.Ill.1996); *Fink v. Gonzalez,* 911 F.Supp. 332, 336 (N.D.Ill.1996). DuFour–Dowell was charged with resisting being arrested for the other two charges for which she contends there is no probable cause. The resisting arrest charge clearly is a related charge. The resisting arrest charge was not an *ex post facto* or novel justification for an otherwise improper arrest; DuFour–Dowell was contemporaneously charged with that offense and ultimately convicted of resisting arrest. *See Biddle,* 992 F.2d at 676.

Since defendants had probable cause to arrest DuFour–Dowell on at least one of the charges, it is unnecessary to determine whether there was probable cause for the other two charges. DuFour–Dowell's Count I false arrest claim will be dismissed.

■ Next to be considered are DuFour–Dowell's § 1983 malicious prosecution claims. The precise nature of such claims, even whether any such claim is recognized by the law, is still an open question in this circuit. *See Reed v. City of Chicago,* 77 F.3d 1049, 1051–53 (7th Cir.1996). Fortunately, resolution of the § 1983 malicious prosecution claims in this case do not require resolving the full parameters of such claims.

■ Defendants also contend that probable cause for the resisting arrest charge defeats the malicious prosecution claims. It is certainly clear that probable cause to arrest a person is an absolute bar to a § 1983 malicious prosecution claim based on the same offense. *See Fernandez v. Perez,* 937 F.2d 368, 371 (7th Cir.1991). In *Biddle,* it was held that probable cause existed for two of three charges and that it was therefore unnecessary, for false arrest purposes, to consider whether probable cause existed to arrest Biddle for the third offense. *Biddle,* 992 F.2d at 677. As to malicious prosecution, the Seventh Circuit held, with little discus-

---

**10.** Although convicted of resisting arrest, DuFour–Dowell contends she did not resist arrest. As to her false arrest claim, it need not be considered whether DuFour–Dowell can attempt to prove facts possibly contrary to her criminal conviction. Pertinent to the false arrest claim is not whether she actually resisted arrest, but whether the officers had probable cause to believe she had. There is no contention by DuFour–Dowell that the officers lacked probable cause to arrest her for resisting arrest.

sion, that the existence of probable cause was an absolute bar to that claim. *Biddle,* 992 F.2d at 678. As to malicious prosecution, the Seventh Circuit did not expressly address whether the finding of probable cause on the two related charges was sufficient for the third charge. *Biddle,* however, has been read as having an implicit holding to that effect. *Brindisi v. Village of Fox Lake,* 1994 WL 270285 *3 (N.D.Ill. June 16, 1994). Unlike, *Biddle* and *Brindisi,* the three charges against DuFour–Dowell were presented in separate complaints [11] and the obstruction charge was prosecuted separately from the other two charges. Unlike DuFour–Dowell's arrest, which would have occurred even absent probable cause for the charges other than resisting arrest, it would have been improper to proceed with the obstruction and battery charges absent probable cause to believe DuFour–Dowell committed those offenses. It is, however, unnecessary to determine if the present case is distinguishable from *Biddle* and *Brindisi.*

■ Even assuming probable cause was lacking for the obstruction and resisting arrest charges and that plaintiff can therefore overcome the hurdle of there having been probable cause to arrest her on another ground (resisting arrest), the § 1983 malicious prosecution claim fails for a related reason. As plaintiff concedes, to the extent a federal malicious prosecution claim is viable, it requires proof of a deprivation of liberty. *Smart v. Board of Trustees of University of Illinois,* 34 F.3d 432, 434 (7th Cir.1994), *cert. denied,* 513 U.S. 1129, 115 S. Ct. 941, 130 L.Ed.2d 885 (1995). *Compare also Albright v. Oliver,* 975 F.2d 343, 347 (7th Cir.1992), *aff'd on other grounds,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Spiegel v. Rabinowitz,* 924 F.Supp. 883, 887 n. 4 (N.D.Ill.1996), *aff'd,* 121 F.3d 251 (7th Cir.

1997); *Dylak v. Wirth,* 1994 WL 273420 *6 n. 6 (N.D.Ill. June 15, 1994); *Cruz v. Stasinopoulos,* 843 F.Supp. 435, 436–37 (N.D.Ill. 1994). Plaintiff contends her liberty was deprived in that she was arrested and transported to the DuPage County Jail where she was booked and bonded out. *See* Pl. Memo. in Opposition to Summary Judgment [194] at 10, 12–13. However, since she was also arrested for resisting arrest, the arrest and transportation would have occurred regardless of the additional two charges. Therefore, being charged with battery and obstruction cannot be considered a cause of any additional deprivation of liberty. In other words, plaintiff must show a deprivation of liberty unrelated to the charge for which probable cause existed to arrest her.[12] Since plaintiff does not point to any such deprivation, her malicious prosecution claims must fail. Counts II and III will be dismissed.

■ DuFour–Dowell also claims that she was subjected to excessive force during the August 19 incident. Defendants argue that the force they used was not excessive or, alternatively, they are entitled to qualified immunity because existing precedents did not clearly establish that the force they used was excessive. Drawing all reasonable inferences and resolving all genuine factual disputes in DuFour–Dowell's favor, the facts are as follows.

Cogger was at DuFour–Dowell's residence on August 11. The alleged conduct that was the basis of the obstruction charge did not involve any physical or violent confrontation. The obstruction charge was based on DuFour–Dowell instructing Yvonne and Ian to go inside. At the time they went to execute the misdemeanor arrest warrant, both Cogger

---

**11.** Defendants provide a copy of a complaint that includes both the battery and resisting arrest charge, but also refer to separate case numbers for each of those charges.

**12.** To the extent that the "palpable injury" requirement set forth in the Seventh Circuit decision in *Albright* continues to be a requirement following the Supreme Court's decision in *Albright,* the Seventh Circuit made clear that merely incurring defense costs was not a palpable injury, but left open whether being required to go

to trial (an event that did not occur in *Albright* ) would qualify as a palpable injury. In light of *Smart,* it would also have to qualify as a deprivation of liberty. In any event, DuFour–Dowell did not go to trial on the obstruction charge and her trial on the battery charge was consolidated with the resisting arrest charge. Therefore, she would have had to go to trial on a charge for which probable cause existed regardless of whether she had also been charged with battery.

and Morgan were aware that there had recently been a report of a gun at DuFour–Dowell's residence. Cogger was also aware that no gun had actually been found. He testified that the report caused him to have a greater level of awareness, but did not cause him to be any more nervous than the usual attempt to arrest someone on a warrant. Morgan also testified that he had a heightened awareness because of this report, but did not take any special precautions. He did not state, one way or the other, whether he had been informed that no gun was found, but it can be inferred from Cogger's testimony that Morgan also was so informed.

Cogger and Morgan arrived at DuFour–Dowell's residence at approximately 12:30 a.m. DuFour–Dowell answered the door barefoot, wearing a summer-weight, sheer nightgown. She remained indoors and opened the storm door a few inches [13] to speak to the officers who were outside on the porch. After being told that she was being arrested on a warrant, DuFour–Dowell asked the officers to see if her husband was in the garage so they could tell him where she was going. She also said that she wanted to tell the kids and change her clothes. Morgan said, "No. You have to come with us.... You have to come as you are." The discussion was not yet confrontational. At some point, Cogger told her it would be "fine" for her to change or go to the bathroom, but he would have to accompany her. DuFour–Dowell again stated she would like to change her clothes and that she would be "happy" to come with the officers after changing and telling her family. At this point, DuFour–Dowell had still not been shown the arrest warrant.

DuFour–Dowell said, "Let me get some clothes on and I'll come with you." She turned and let the storm door close. She did not close the wood door. Morgan opened the storm door and stated, "Now you've had it, lady." Morgan grabbed her arm, gave her a hard jerk, and forced her face down on the floor with her arm behind her back. DuFour–Dowell's eyeglasses were broken by the impact. Pressure was applied to DuFour–

Dowell's back by a knee or foot. DuFour–Dowell was handcuffed face down. Although she was wearing a sheer nightgown through which defendants could see she had no weapons, defendants patted her down, including running their hands between her legs. DuFour–Dowell was held down on the floor for a few minutes.

Following the August 19 incident, DuFour–Dowell had chest soreness for up to three weeks, a sore shoulder and back, an abrasion on her ankle, and a bruise and gash on her arm. DuFour–Dowell was taken to the emergency room at Hinsdale Hospital. The doctor who examined her there testified that DuFour–Dowell suffered from acute chest wall pain and acute anxiety.

In her deposition for the present litigation, DuFour–Dowell testified that she did not fight back and did not kick or hit either officer. In their replies, defendants, citing *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), contend that DuFour–Dowell cannot deny such conduct because she was found guilty of resisting arrest. The resisting arrest charge alleged that DuFour–Dowell "pushed, kicked, and wrestled with Richard Morgan." DuFour–Dowell objects that defendants raise Heck for the first time in their reply.

In their Rule 12(M) Statements filed with their initial motion, defendants assert that it was uncontested that "DuFour–Dowell resisted the attempts of the officers to arrest her." Cogger/Hinsdale Rule 12(M) Statement ¶ 14.[14] Cited in support of that contention is the entire transcript of DuFour–Dowell's resisting arrest trial and a certified copy of her conviction. In ¶ 27 of his Amended 12(M) Statement, which was filed before plaintiffs' answer to the summary judgment motion, Morgan states it is uncontested that the complaint on which DuFour–Dowell was found guilty alleges she "pushed, kicked, and wrestled" with him. In their opening briefs, none of the defendants expressly relied on *Heck* or its progeny. After DuFour–Dowell denied that the aforementioned factual assertions of defendants were

---

**13.** The storm door did not have a screen in it, only glass.

**14.** Morgan adopted the Cogger/Hinsdale Rule 12(M) Statement as his own.

uncontested and pointed to her deposition testimony that she had not resisted, defendants replied that *Heck* precluded DuFour–Dowell from denying that she had resisted arrest by pushing, kicking, and wrestling Morgan.

At the time defendants moved for summary judgment, they knew that DuFour–Dowell had testified that she had not offered resistance to her arrest. Therefore, it is questionable whether mere assertion in the Rule 12(M) Statements that her resistance was uncontested because of her conviction would be sufficient to preserve the *Heck* issue absent any legal argument in the opening brief.[15] But even assuming the *Heck* argument was not waived, defendants' reliance on *Heck* is misplaced.

In *Heck*, 512 U.S. at 486, 114 S.Ct. at 2372, the Supreme Court stated: "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose lawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been" invalidated. As an example of such a situation, the Supreme Court stated that pursuing a damages claim based on an unlawful arrest would be inconsistent with a conviction for resisting arrest if lawfulness of the arrest was a necessary element of the criminal offense. *See id.* at 486 n. 6, 114 S.Ct. at 2372 n. 6. The Supreme Court further stated that "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487, 114 S.Ct. at 2372. An example of a claim that would not necessarily imply invalidity of the conviction is a claim based on an unreasonable search that produced evidence used in the prosecution of the criminal charge because doctrines such as independent source, inevitable discovery, and harmless error may permit use of the evidence in the criminal case despite there being an unlawful search. *See id.* at 487 n. 7, 114 S.Ct. at 2372 n. 7. In *Booker*, 94 F.3d at 1056, the

Seventh Circuit held that a claim for unlawful arrest would not necessarily imply the invalidity of a conviction, even if it might preclude admission of a confession, because there could be other evidence of the defendant's criminal conduct.

In DuFour–Dowell's criminal prosecution, the jury was instructed that one element of the resisting arrest charge was that "the defendant knowingly resisted or obstructed the performance by Deputy Morgan of an authorized act within his official capacity." Tr. 188 (Cogger Exh. 4). There was no instruction that the jury had to find that DuFour–Dowell kicked, pushed, punched, or wrestled either officer. The jury was also instructed: "A person is not authorized to use force to resist an arrest which he knows is being made by a peace officer, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." *Id.* at 188–89. There was no instruction that excessive force on a police officer's part would be a defense to a resisting arrest charge.

■ In closing arguments, the prosecution contended DuFour–Dowell resisted arrest by backing away from the door, attempting to close the door, kicking Morgan, locking her arms to prevent being handcuffed, pushing away, pulling away, kicking, wrestling, and by indicating she did not want to go with the officers. *Id.* at 158–59. The jury was not required to specify on what basis it found DuFour–Dowell guilty of resisting arrest. The jury did not have to find that DuFour–Dowell physical resisted or retaliated when knocked to the ground. There were other actions on which the jury could have based its verdict. Also, the jury found DuFour–Dowell not guilty of battery of Morgan. Moreover, even while resisting an arrest, an arrestee can be subjected to force excessive for the situation. *See Crooms v. P.O. Mercado, No. 41*, 955 F.Supp. 985, 991 (N.D.Ill.1997). *See also Bemben v. Hunt*, 1995 WL 27223 *3 (N.D.Ill. Jan.23, 1995).

---

**15.** Also, the assertion in ¶ 14 of the Rule 12(M) Statements is inadequately supported. Citation to a 194–page trial transcript and 11–page sentencing transcript without any specific page citations does not satisfy Rule 12(M)'s requirement of *"specific* references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in [each] paragraph" of the Rule 12(M) Statement.

Defendants contend that self-defense to excessive force is a defense to resisting arrest, *see People v. Williams*, 267 Ill.App.3d 82, 203 Ill.Dec. 831, 835–36, 640 N.E.2d 981, 985–86 (1994), and therefore a finding of excessive force would necessarily be inconsistent with DuFour–Dowell's conviction. The jury, however, could have found that the conduct at the door, which preceded any possible excessive force, constituted resisting arrest. The jury also could have found that the acts of resisting arrest occurred subsequent to and not in direct relation to any excessive force. *Cf. McNew v. Pleasant*, 1992 WL 162255 *3 (N.D.Ill. July 6, 1992). Under either circumstance, self-defense to excessive force would not have been a defense to the conviction.

Under the facts of the present case, a finding of excessive force is not necessarily inconsistent with the validity of DuFour–Dowell's resisting arrest conviction. *Heck* does not bar DuFour–Dowell's excessive force claim.

*Heck* is not a doctrine of res judicata· or collateral estoppel. *See Powers v. Sickler*, 1995 WL 146272 *4 (N.D.N.Y. March 31, 1995); *Olsen v. Correiro*, 1994 WL 548111 *6 (D.Mass. Sept. 26, 1994); *Canatella v. City of San Francisco*, 1994 WL 456873 *1–2 & nn. 5, 7 (N.D.Cal. Aug. 12, 1994), *aff'd by unpublished order*, 74 F.3d 1245 (9th Cir.1996). *See also Heck*, 512 U.S. at 480 n. 2, 114 S.Ct. at 2368 n. 2. *Heck* only applies in determining whether particular claims for damages are cognizable. State law controls as to any res judicata or collateral estoppel effect. *Heck*, 512 U.S. at 480 n. 2, 114 S.Ct. at 2368 n. 2. Defendants' contentions also seem to be in the nature of collateral estoppel or issue preclusion. They apparently contend DuFour–Dowell should be barred from denying she offered any resistance whatsoever even if she still contends that the force used was an excessive reaction to the resistance offered.

Illinois law is not entirely clear as to the application of collateral estoppel when the prior judgment is a criminal conviction. *See Smith v. Sheahan*, 959 F.Supp. 841 (N.D.Ill. 1997) (extensively discussing the existing precedents). When used defensively in a § 1983 action, the collateral estoppel effect of a criminal conviction has been limited to being *prima facie* evidence, not conclusive evidence. *See Calusinski v. Kruger*, 24 F.3d 931, 934 (7th Cir.1994); *Brown v. Green*, 738 F.2d 202, 206 (7th Cir.1984); *Smith*, 959 F.Supp. at 843, 846–47. The Illinois cases appear to support a rule that the closer the correlation between the facts and law of the criminal and civil cases, the more likely it is that a preclusive effect will be accorded to the conviction. *See Smith*, 959 F.Supp. at 846–47. Here, the circumstances of the criminal conviction do not permit a determination as to the pertinent facts found by the jury. It cannot be known what conduct of DuFour–Dowell the jury found constituted resistance. Under those circumstances, the conviction certainly cannot be accorded a preclusive effect in the present case and it is questionable as to whether it would even be proper as *prima facie* evidence that DuFour–Dowell offered some sort of resistance. What is the jury in the present case to understand such resistance to be? That issue, though, need not be presently resolved. It is more appropriately resolved on a properly briefed motion in limine filed with the final pretrial order. For present summary judgment purposes, even assuming the conviction is admissible as *prima facie* evidence, it would still have to be assumed that the finder of fact would instead choose to accept the contrary evidence that DuFour–Dowell offers. Therefore, the question still is whether DuFour–Dowell presents sufficient evidence from which a finder of fact could conclude that the officers' use of force was excessive under the circumstances.

 In evaluating whether the force employed by defendants [16] was excessive, an

---

**16.** Defendants do not attempt to distinguish between the possibly varying conduct of Cogger and Morgan. The evidence assumed to be true for present purposes is that Morgan initially grabbed DuFour–Dowell and threw her to the floor. Drawing all inferences in plaintiff's favor,

it must be assumed that both officers applied pressure to DuFour–Dowell's back while she was on the floor. Even if one officer stood by while the other applied the pressure, the first officer could still be liable if he had a realistic opportu-

"objective reasonableness" standard is applied. *Lanigan v. Village of East Hazel Crest, Ill.,* 110 F.3d 467, 475 (7th Cir.1997).

Claims that a law enforcement officer used excessive force in the course of an arrest, investigatory stop, or other seizure are analyzed under the Fourth Amendment's objective reasonableness standard which requires the court to balance " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (quoting *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985)); *see also Jones v. Webb,* 45 F.3d 178, 183 (7th Cir. 1995). The right of a law enforcement officer to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. The question that regularly confronts us in these cases is precisely how much force will be considered "objectively reasonable." That, of course, depends on the facts and circumstances of each case, but we generally look to the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.; see also Clash v. Beatty,* 77 F.3d 1045, 1047 (7th Cir.1996). We must consider the circumstances confronting the officer not through "the 20/20 vision of hindsight," but through the more immediate perspective of a reasonable officer on the scene. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871–72. As *Graham* explained:

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount

of force that is necessary in a particular situation.

*Id.* at 396–97, 109 S.Ct. at 1872 (internal quotation and citation omitted). The objective nature of the inquiry means that we disregard the officer's underlying intent or motivation. *See id.; Jones,* 45 F.3d at 183.

*Frazell v. Flanigan,* 102 F.3d 877, 882–83 (7th Cir.1996).

■ Here, defendants were arresting DuFour–Dowell on a misdemeanor charge for an incident in which Cogger was directly involved. Cogger knew that the prior incident had involved no violence and only minimal confrontation. On the facts assumed to be true, there is no indication that DuFour–Dowell posed any direct threat to the officers. There was prior information about a gun at the house, but none had been found and the information appeared to be minimal grounds for apprehension. At the time DuFour–Dowell was first thrown to the ground, the parties' conversation had not been particularly confrontational and DuFour–Dowell had indicated she was willing to cooperate, but wished to change clothes. DuFour–Dowell's request was reasonable, as was the officers' desire to accompany her to ensure she would not try to escape. The officers, though, had no particular reason to believe DuFour–Dowell would attempt to escape. At the point that DuFour–Dowell turned to go into the house, it can be inferred that Morgan could have stopped her progress simply by grabbing her arm. *Cf. McNew,* 1992 WL 162255 at *4 ("It was within the jury's factfinding discretion to find that, even after Terry McNew continued to walk, Terry McNew could have been stopped by simply grabbing him more firmly instead of immediately tackling and kneeing him in the back."). Throwing DuFour–Dowell to the floor was unnecessary. Applying enough pressure to cause acute chest pain and shoulder and back pain for weeks also was unnecessary in that DuFour–Dowell was not engaging in any significant physical resistance. Additionally, patting down a handcuffed suspect in a sheer nightgown that had already revealed she had no weapons also was an unnecessary act.

nity to prevent further harm. *See Fantasia v.*

*Kinsella,* 956 F.Supp. 1409, 1414 (N.D.Ill.1997).

Defendants contend merely pushing a person to the ground and restraining her with substantial pressure and handcuffs cannot constitute excessive force. The amount of force used, however, must be considered in light of the circumstances. Even "one violent push and poke" will constitute excessive force where there is no provocation. *Lanigan*, 110 F.3d at 475–76. *See also Clash*, 77 F.3d at 1048 (shoving unarmed and handcuffed arrestee into police car, causing mild trauma injury to arrestee's knee was excessive force). Since, on the facts assumed to be true for summary judgment purposes, the force employed in effecting DuFour–Dowell's arrest substantially exceeded that which could reasonably be viewed as necessary under the circumstances, DuFour–Dowell has made an adequate showing of excessive force. *Cf. McNew*, 1992 WL 162255 at *4 (it was excessive force to tackle and knee in the back a person who represented no substantial threat to security officers, was suspected of a nonsevere crime, and was walking away but unlikely to escape); *Lilly v. Gryczewski*, 1996 WL 599009 *6 (N.D.Ill. Oct. 16, 1996) (placing knee on back of arrestee who was already face down on the floor after attempting to walk away from arrest for minor offense is excessive force). If DuFour–Dowell's alleged offense underlying the arrest warrant had been violent and/or she also had either given significant indication of fleeing or had put up substantial physical resistance to being arrested, then the force would likely not be excessive. *Compare Jones*, 45 F.3d at 184; *Rice v. Burks*, 999 F.2d 1172 (7th Cir. 1993); *Tom v. Voida*, 963 F.2d 952, 955, 958 (7th Cir.1992). Those facts, however, are not present in this case, at least for purposes of deciding the summary judgment motion.

Defendants contend a pat down following an arrest is always permitted and cannot possibly constitute excessive force. Although characterization of the pat down as excessive force is a misnomer, it is, like excessive force, a claim for unlawful intrusion violative of the Fourth Amendment. Citing *United States v. Wheeler*, 800 F.2d 100, 103 (7th Cir.1986), plaintiff contends a pat down for weapons incident to a *Terry* stop requires that there be a reasonable belief that the arrestee may be armed and dangerous. DuFour–Dowell,

however, was not being subjected to a *Terry* stop, but was being arrested with there being probable cause for the arrest. Under those circumstances, a search for weapons and any evidence that the defendant might have on his or her person is always permitted. *United States v. Robinson*, 414 U.S. 218, 234–35, 94 S.Ct. 467, 476–77, 38 L.Ed.2d 427 (1973); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1269 (7th Cir.1983). While *Robinson* permits a "full search" for weapons and evidence, a full search is only the maximum intensity necessary to determine if the arrestee has any weapons or evidence. *Mary Beth G.*, 723 F.2d at 1270. Here, defendants had already seen through the sheer nightgown that DuFour–Dowell had no weapons or other items on her person. Therefore, no objectively reasonable basis existed to go further and pat her down. Moreover, having already been handcuffed and sufficiently inspected visually, the circumstances particularly did not justify a police officer of the opposite sex patting down an arrestee in private areas. *Cf. Canedy v. Boardman*, 16 F.3d 183, 186–87 (7th Cir.1994); *Mary Beth G.*, 723 F.2d at 1272–73.

Defendants still contend that they are entitled to qualified immunity. Even Hinsdale invokes that doctrine, though it is inapplicable to a municipality. *Lanigan*, 110 F.3d at 480 n. 7. Once qualified immunity is invoked, the plaintiff bears the burden of showing the existence of a clearly established constitutional right. *Clash*, 77 F.3d at 1047. "The plaintiff may do so by (1) pointing to a closely analogous case that established a right to be free from the type of force the police officers used on him, or (2) showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Id.* at 1048. *Accord Lanigan*, 110 F.3d at 476. The Seventh Circuit has recognized, though, that the excessive force standard is well settled and, since it is already an objective standard based on a reasonable police officer, qualified immunity normally will not apply. *Lanigan*, 110 F.3d at 476–77. However, the Seventh Circuit has left open the possibility that the applicable law may be sufficiently

unsettled to justify application of the defense in a particular case. *Id.* at 477.

First, it was clearly established prior to August 1994 that it is inappropriate to employ a more intrusive search technique after it has already been determined that the arrestee has no weapons or items subject to seizure. *See Mary Beth G.*, 723 F.2d at 1270. The claim based on the unjustified pat down search of private areas will not be dismissed.

As to the excessive force, plaintiff does not point to any closely analogous Seventh Circuit case that predates the August 1994 incident. *See Lilly*, 1996 WL 599009 at *6.[17] Therefore, it must be determined whether the force used was so plainly excessive that no reasonable police officer would believe the force did not violate the Fourth Amendment. Here, defendants threw DuFour–Dowell to the floor and applied substantial pressure to her back even though she responded with virtually no resistance and had given virtually no indication of fleeing. Clearly such force was excessive and a police officer would know that it was. *Cf. Clash*, 77 F.3d at 1048. Cogger and Morgan are not entitled to qualified immunity on the excessive force claim.

The Count I excessive force claim will not be dismissed.

▮ Next to be considered is Yvonne's Count VII excessive force claim against Morgan. For purposes of resolving this motion, Yvonne's testimony must be accepted as true. *See* Yvonne Dep. at 66–72, 135–37, 140–41 (Plaintiffs' Exh. B). Yvonne was a month short of 17 years old as of the August 19 incident. Morgan had cuffed one of DuFour–Dowell's hands and was attempting to cuff the other hand when Yvonne went behind him on the way to the garage to get Dowell. Morgan reached up and grabbed Yvonne by the neck, breaking her necklace. Morgan held Yvonne's neck for "not even a couple seconds" and Yvonne was able to say "Let me go" while being held. Yvonne fell to the ground when she was grabbed and hit her knee, cutting it. Yvonne's neck and knee showed bruising for four to five days. The cut on her knee also left a scar. Yvonne never sought treatment and has no current problem other than the scar. After letting go of her, Morgan did not prevent Yvonne from leaving.

A police officer has reason to be startled when another person comes behind him while he is attempting to handcuff an arrestee. It is reasonable to quickly react by grabbing the other person. Morgan held Yvonne only briefly and did not cause substantial injury. If Morgan had walked up to Yvonne and grabbed her neck with no provocation whatsoever, it would probably be excessive force even given the minimal injury caused. *See Lanigan*, 110 F.3d at 475–76; *Clash*, 77 F.3d at 1048. That, however, was not the situation here. Morgan was in the middle of handcuffing an arrestee when Yvonne came up behind him. Morgan's reaction, which he terminated in less than a couple seconds after seeing who was behind him, was not an objectively unreasonable reaction. Yvonne has not shown that she was subjected to excessive force. *Compare Thompson v. City of Lawrence, Kansas*, 58 F.3d 1511, 1517 (10th Cir.1995). Yvonne's Count VII excessive force claim will be dismissed. Also, her Count XX § 1983 claims against the Sheriff will be dismissed since a necessary component of the claims against Doria is that Yvonne was subjected to a constitutional deprivation by Morgan.

▮ In Count XIX, DuFour–Dowell also claims that Doria personally and the Sheriff in his official capacity are liable because Morgan's unconstitutional conduct was pursuant to an official policy or custom of the Sheriff. *See generally Board of County Commissioners of Bryan County, Oklahoma v. Brown,*

17. *Lilly* holds that the defendant in that case was protected by qualified immunity. That case is similar to DuFour–Dowell's situation in that Lilly was being arrested for a minor, nonviolent offense and was restrained by being kneed on the ground after starting to walk away. Unlike the present case, Lilly clearly was attempting to leave the officer's presence and she offered great-er resistance than DuFour–Dowell. Today's ruling is in accord with *Lilly* in holding that there are no closely analogous Seventh Circuit precedents. *Lilly*, however, does not go on to consider whether the officer's conduct in that case was so plainly excessive that a police officer would objectively have known his or her conduct violated the Fourth Amendment.

— U.S. ——, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *West v. Waymire,* 114 F.3d 646 (7th Cir.1997); *Robles v. City of Fort Wayne,* 113 F.3d 732 (7th Cir.1997). The only remaining constitutional claim is DuFour–Dowell's excessive force claim. It need only be considered whether that particular constitutional deprivation has been shown to be pursuant to an official policy or custom.

Plaintiffs make no attempt to show that any act of Morgan was pursuant to an official policy or custom. They argue the Sheriff failed to adequately raise the issue because he only conclusorily asserts that no improper policy or custom existed. It is, however, sufficient for the movant to simply assert that the facts do not support a particular aspect of the plaintiff's claim. *Selan,* 969 F.2d at 564 (quoting *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54). Since the burden would be on plaintiffs to prove there is a municipal policy or custom, they also bear that burden on summary judgment. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Since DuFour–Dowell has failed to point to evidence supporting that Morgan's conduct was pursuant to an official policy or custom, her Count XIX claim will be dismissed in its entirety.

In their opening brief, Cogger and Hinsdale argued that it had not been shown that Cogger or O'Malley had committed any constitutional violation. For the first time in its reply, Hinsdale raises the argument that a basis for municipal liability for Cogger's conduct has not been shown. Since not raised until the reply, plaintiffs were under no obligation to show a basis for municipal liability on Hinsdale's part. However, since it is likely to be a substantial question whether DuFour–Dowell can show Cogger's claimed excessive force was pursuant to a custom or policy of the Village of Hinsdale and would save substantial time at trial if the issue can be resolved on summary judgment, further briefing will be taken on this issue. DuF-

our–Dowell shall assume that Hinsdale denies there are any facts supporting a municipal policy or custom. DuFour–Dowell shall file a Rule 12(N)(3)(b) Statement and supporting brief. Plaintiff shall consider the applicability of *County Commissioners v. Brown,* —— U.S. ——, 117 S.Ct. 1382, 137 L.Ed.2d 626, and *Robles,* 113 F.3d 732.[18] Plaintiff is not obliged to pursue municipal liability. If, after consideration of the available evidence and applicable law, plaintiff decides not to further pursue municipal liability, she should file a statement to that effect instead of a brief.

The only remaining federal claim is DuFour–Dowell's excessive force claim against Morgan and Cogger, and possibly against Hinsdale and the Sheriff as well. The various state law claims, including ones brought by plaintiffs other than DuFour–Dowell, all center around the August 19 incident and most are based on the alleged excessive force to which DuFour–Dowell was subjected. The state law claims are sufficiently related to the excessive force claim to continue to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). The merits of those claims will be considered.

There is no contention by DuFour–Dowell that an Illinois false arrest claim is distinct from a § 1983 arrest without probable cause claim in any way that is pertinent to the claims of DuFour–Dowell. *See Nielsen,* 948 F.Supp. at 796. DuFour–Dowell's Count IV false arrest claim will be dismissed.

As to Yvonne's state law claims for false imprisonment and false arrest, she makes no arguments distinct from her arguments regarding excessive force. Like her excessive force claim, Count VIII will be dismissed.

A constitutional claim for excessive force is distinct from a state law claim against a police officer for battery. *Davis v. Lane,* 814 F.2d 397, 400 (7th Cir.1987); *Borek v. Town of McLeansboro,* 609 F.Supp. 807, 809

---

18. Since plaintiffs were under the mistaken impression that the Sheriff had waived his municipal liability argument, DuFour–Dowell may also simultaneously seek reconsideration of the dismissal of the custom or policy claims based on Morgan's claimed excessive force. If DuFour–Dowell chooses to raise this issue, she should file a single, consolidated Rule 12(N)(3)(b) Statement and a single, consolidated brief not to exceed 10 pages addressing both Hinsdale's and the Sheriff's liability. She may address both the Sheriff's official capacity liability and Doria's individual liability.

(S.D.Ill.1985). Defendants do not make any legal arguments as to the state law claims of battery. Therefore, none of the state law battery claims will be dismissed. Counts XV, XVI, and XVII will not be dismissed.

■ Still to be considered are the various claims for intentional infliction of emotional distress. These claims can be divided into two categories. First are the claims based on conduct committed upon the person. These are the Count V (DuFour–Dowell), IX (Yvonne), and XII (Paulette) claims based on assaults upon the particular plaintiff asserting each count. The second category includes those claims based on observing assaults upon one or more of the other plaintiffs, Counts VI (Dowell), X (Yvonne), XI (John), XIII (Paulette), and XIV (Ian).

The facts as to the assaults upon DuFour–Dowell and Yvonne have previously been described. Resolving disputes and drawing inferences in plaintiffs' favor, the facts regarding Paulette are as follows. Paulette was about eight and one-half years old as of August 1994. When Morgan escorted DuFour–Dowell to the bathroom, he passed Paulette and pushed her aside against the wall. She did not fall down. While doing this, Morgan also placed his hand on his gun.

■ An intentional infliction of emotional distress claim requires proof of the following. "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress." *McGrath v. Fahey,* 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988). *Accord Doe v. Calumet City,* 161 Ill.2d 374, 204 Ill.Dec. 274, 282, 641 N.E.2d 498, 506 (1994); *Amato v. Greenquist,* 287 Ill.App.3d 921, 223 Ill.Dec. 261, 269–70, 679 N.E.2d 446, 454–55 (1997); *Hunt–Golliday v. Metropolitan Water Reclamation District of Greater Chicago,* 104 F.3d 1004, 1016 (7th Cir.1997). Defendants argue that plaintiffs cannot satisfy any of these elements.

■ All the emotional distress claims fail because plaintiffs cannot satisfy the requirement of showing extreme and outrageous conduct. Not every battery will satisfy the extreme and outrageous requirement for an intentional infliction of emotional distress claim. *Whitehead v. AM International, Inc.,* 860 F.Supp. 1280, 1290 (N.D.Ill.1994). "The liability clearly does not extend to mere insults, indignities, threats, annoyance, petty oppression or trivialities.... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (quoting *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1977)).

■ In situations involving unlawful arrests or excessive force by police officers, there must be more than just a lack of probable cause or some excessive force. To qualify as extreme and outrageous, the force used must be very extreme or cause very severe physical injury. Whether a false arrest was totally lacking in justification will also be considered. *See Barron v. Sullivan,* 1997 WL 158321 *11–12 (N.D.Ill. March 31, 1997); *Carr v. Village of Richmond,* 1996 WL 663921 *7–8 (N.D.Ill. Nov. 15, 1996); *Varvaris v. Delia,* 1996 WL 521287 *4 (N.D.Ill. Sept. 11, 1996); *Stevens v. City of Chicago,* 1996 WL 480389 *2 (N.D.Ill. Aug. 20, 1996). Here, there was probable cause for the arrest and some justification (DuFour–Dowell walking away) to attempt to restrain DuFour–Dowell. Moreover, neither the force employed nor the physical injury inflicted upon DuFour–Dowell, Yvonne, or Paulette was exceptionally severe. That does not constitute extreme and outrageous conduct. *Cf. Carr,* 1996 WL 663921 at *8. DuFour–Dowell also complains about being handcuffed and watched while she went to the bathroom. Police officers are justified in observing and limiting the freedom of a person already under arrest. Even assuming this is a circumstance representing little risk of escape or danger so that leaving the bathroom door slightly ajar would have been a sufficient security precaution, defendants' conduct would still not be extreme and outrageous. *Cf. Barron,* 1997 WL 158321 at *12. Since no plaintiff makes a showing of ex-

treme and outrageous conduct, all the intentional infliction of emotional distress claims will be dismissed. Counts V, VI, IX, X, XI, XII, XIII, and XIV will be dismissed.

In sum, all claims are being dismissed except for DuFour–Dowell's Count I excessive force claim against Cogger and Morgan; DuFour–Dowell's Count XV state law assault and battery claim against Cogger and Morgan; Yvonne's Count XVI state law assault and battery claim against Morgan; and Paulette's Count XVII state law assault and battery claim against Morgan. Also, DuFour–Dowell's Count XVIII municipal liability claim against the Village of Hinsdale based on Cogger's use of excessive force is not dismissed, but there will be further briefing on the municipal liability issue.

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' motion for leave to amend their complaint [176–1] is granted.

(2) Defendants Cogger's and Hinsdale's motion to supplement the record [206–1] is denied. Defendant Morgan's motion to file supplement to Morgan's amended 12(M) Statement of Undisputed Facts [207–1] is granted. Defendant Morgan's motion for clarification and other relief [217–1, 2] is denied without prejudice. Defendants' joint motions to supplement the record [220–1] and to supplement their briefs [222–1] are granted.

(3) Plaintiffs' motion to strike portions of defendants' reply in support of their motions for summary judgment [211–1] is granted in part and denied in part. Plaintiffs' motion to strike portions of defendant Morgan's reply to plaintiffs' 12(N) Statement [212–1] is denied. Plaintiffs' motion to strike portions of defendants Cogger's and Village of Hinsdale's general objections and response to the plaintiffs' 12(N) Statement [213–1] is denied.

(4) Defendants' motions for summary judgment [174–1] are granted in part and denied in part. All claims of the amended complaint are dismissed except the Count I excessive force claim, Count XV, Count XVI, Count XVII, and the Count XVIII municipal liability excessive force claim. All claims against defendant Doria are dismissed. The official capacity claims against Morgan and Doria are dismissed. All claims by or on behalf of plaintiffs Paul Dowell, John DuFour, and Ian Kirk are dismissed.

(5) By July 14, 1997, plaintiff DuFour–Dowell shall file a Rule 12(N)(3)(b) Statement and brief in support of municipal liability. Defendants' answers are due July 28, 1997. No brief shall exceed 10 pages. No reply brief is permitted. No extensions will be granted. Ruling will be by mail.