Shirley WATKINS, Plaintiff,

v.

CITY OF CHICAGO, a municipal
corporation, Defendant.

No. 97 C 2662.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 29, 1999.

Jeffrey Grant Brown, Attorney at Law, Chicago, IL, for Plaintiff.

Mary Leone Smith, Joanne Simboli Hodge, Derrick Matthew Kedziora, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, Patricia Therese Bergeson, University of Chicago, Office of Legal counsel, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Shirley Watkins is an African–American woman who was denied a job as a Chicago police officer in 1991, in part because of circumstances surrounding a 1982 arrest in which charges were never pressed.[1] After receiving her EEOC right-to-sue letter, she filed this lawsuit against the City of Chicago (the "City"), alleging disparate treatment and disparate impact race discrimination under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* as amended by the Civil Rights Act of 1991.[2] The City now moves for summary judgment on both Title VII claims and to strike several paragraphs of her statement of facts under Local Rule 56.1(b). I deny the City's motion for summary judgment on the disparate treatment claim and grant it on the disparate impact claim. The motion to strike is denied as moot.

### I.

Ms. Watkins took the City Police Officer Examination in May 1991 and, in September 1991, signed a waiver authorizing the release of her arrest record to the Chicago Police Department (the "Department"). Detective Arthur Tassone conducted a background investigation of Ms. Watkins for the Department in connection with her application. In a report dated July 19, 1992 (the "Report"), he wrote that fingerprint checks indicated that Ms. Watkins had been arrested for possession of a controlled substance (hashish) and unlawful use or possession of a dangerous weapon (a knife), but that the "substance" was tested and found not to be hashish or any controlled substance. He stated that the authorities decided not to prosecute the weapons charge.

Detective Tassone also wrote that, on July 13 and 15, 1992, he asked Ms. Watkins whether she had ever been arrested, taken into custody, fingerprinted, or jailed, and that she said that she had never been arrested. Ms. Watkins denies that she said any such thing, and says that she had previously talked about her arrest with Officer Patricia Harrison, a Department investigator, and that she had also inquired at the Department about whether the arrest could impede her application (and was assured that it would not).

Detective Tassone reported, further, that he then told Ms. Watkins about the 1982 arrest, and that she recalled being taken into custody about 10 or eleven years ago after a traffic stop when she was riding as a passenger on a motorcycle with a male friend. Detective Tassone asked Ms. Watkins to write an explanation of the facts and circumstances surrounding her arrest, which she did. There she stated that she had put a pouch in her purse at her friends request before riding the motorcycle but that she did not know what was in it and found out only when she went to court the next morning that it contained a knife and "suspected cannabis which was

---

1. This decision was subsequently reversed by a Personnel Review Board which found no basis for her disqualification. Ms. Watkins is now employed as a Chicago police officer. This does not affect her standing to sue, as she may be entitled to back pay and punitive damages.

2. Ms. Watkins' claim is governed by the 1991 Civil Rights Act because it arose after November 21, 1991, the effective date of the Act. *See Mozee v. American Comm. Marine Serv. Co.,* 963 F.2d 929, 932 (7th Cir.1992).

tested negative." (She never found out what the "suspected cannabis" was, as opposed to what it wasn't.)

Detective Tassone relied upon a statement by Officer David Strandberg, one of the officers who had arrested her in that incident. Strandberg said that Ms. Watkins was "argumentative and uncooperative during the arrest and processing." "Even though this arrest was almost 10 years ago," wrote Officer Strandberg, he "was able to recall most of the facts and circumstances largely due to hostile attitude displayed by the candidate [Ms. Watkins] towards me and my partner. Her unwillingness to cooperate in my opinion indicated she at that time felt contempt for our office. I would not recommend the candidate."

Ms. Watkins points out that before the Personnel Review Board, Officer Strandberg denied that he made these statements. She cites testimony by Sergeant Paul Parizanski, one of the people who made the decision to reject her and who was aware of the inconsistency. Strandberg also testified that there was "nothing [unusual about the arrest that could have allowed him to recall it after nine years] that had anything to do with the lady" as opposed to her male companion. Ms. Watkins was never charged with any offense in connection with this alleged disorderly conduct.

Ms. Watkins claims that her application was rejected because of her race and because the City has a policy of excluding applicants who have been arrested. The City denies any racial motivation in its decision, denies having a policy of excluding candidates with prior arrests, and denies rejecting Ms. Watkins because she had been arrested. The City claims that its decision was based on its policies of disqualifying all persons: (1) who have engaged in illegal disorderly conduct, whether or not they were convicted or (2) who have made untrue statements or failed to provide material information during their application. According to the City, the "argumentative and uncoopera-

tive" behavior Ms. Watkins is supposed to have displayed during her arrest qualifies as engaging in illegal disorderly conduct, and her alleged denial to Detective Tassone that she ever was arrested qualifies as a materially false statement.

## II.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir.1999); Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir.1997) (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818–19 (7th Cir.1999). On the issue of whether Ms. Watkins was subjected to disparate treatment because of her race, there is a genuine issue of material fact because a reasonable jury could find incredible the Department's purported reason for rejecting her application and because there is a genuine dispute about whether Ms. Watkins denied having been arrested.

No direct evidence of discrimination is alleged here. An employment discrimination case based upon circumstantial or indirect evidence can be analyzed using the familiar burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), where the plaintiff may avoid summary judgment by arguing that the defendant's nondiscriminatory reason was pretextual. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 723 (7th Cir. 1998) Alternatively, the plaintiff may pro-

ceed under the "mixed motives" or direct method, where the plaintiff may avoid summary judgment by producing sufficient evidence, either direct or circumstantial, to create a triable issue as to whether race was a motivating factor in her discharge. *Id.* at 722.

The sort of evidence relevant here is "evidence that plaintiff was qualified for the job in question but was passed over in favor of ... a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief or a mere pretext for discrimination." *Huff v. UAR-CO, Inc.*, 122 F.3d 374, 380 (7th Cir.1997). This sort of circumstantial evidence "in a direct case is substantially the same as the evidence required in a so-called indirect or *McDonnell–Douglas* case." *Marshall v. American Hosp. Assn.*, 157 F.3d 520, 525 (7th Cir.1998). Therefore, although the parties adopt the *McDonnell–Douglas* approach, I need not choose between these approaches and, at this stage, neither need they.

A factfinder's rejection of the defendant's nondiscriminatory explanation of the facts comprising a prima facie case may itself be enough to find for the plaintiff on the issue of liability. *Wichmann v. Southern Illinois Univ.*, 180 F.3d 791, 803 (7th Cir.1999) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *accord Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1045 (7th Cir.1999)).

The City does not dispute that Ms. Watkins is African American, and so in a protected group (though of course all races are protected under federal employment discrimination law, *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 745 (7th Cir.1999)), was qualified, and was passed over in favor of someone of another race. It rests its whole argument for summary judgment as to the disparate treatment claim on its nondiscriminatory explanation of the facts, namely, that Ms. Watkins was rejected because she lied about having been arrested and had engaged in unlawful disorderly conduct. Ms. Watkins' rebuttal of these claims could persuade a rational trier of fact that these reasons were pretextual, and that could be enough for a trier of fact to find the City liable for intentional race discrimination. *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742.

■ First, there is a genuine issue of material fact about whether Ms. Watkins denied that she had been arrested. Detective Tassone will testify that she did, but Ms. Watkins disputes this. Of course, "a bald denial" "could not lead a rational trier of fact to find for the non-moving party," *Liu v. T & H Machine Inc.*, 191 F.3d 790, 796–97 (7th Cir.1999) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). But while the non-movant need come forward with appropriate evidence demonstrating that there is a pending dispute of material fact, *id.* (citing *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505), the burden on the party opposing the motion is not onerous. She "need not match the movant witness for witness, nor persuade the court that h[er] case is convincing"; she "need not tender evidence in a form that would be admissible at trial" and "may rely on affidavits or any other materials of the kind identified in Rule 56(c)." *Id.* (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548).

Here, Ms. Watkins' deposition testimony identifies several Chicago police officers to whom she says she disclosed her arrest prior to her interview; this testimony, if credited, could persuade a reasonable jury that Detective Tassone's uncorroborated report was more probably than not untrue because it is implausible that she would lie to the Department after having told it the truth. In addition, the fact that she had signed a waiver allowing investigation of her arrest record might persuade a rational trier of fact that she would have more likely than not told the truth about something that any reasonable person would have known would be discovered. A rational trier of fact might well agree with the City, but it might agree instead with

Ms. Watkins, and since the issue is material, she is entitled to make her case to a jury.

Likewise, there is a genuine question of material fact about whether Ms. Watkins was rejected because she had engaged in unlawful disorderly conduct. The Department states that it relied upon Officer Strandberg's statement that he recalled the circumstances of her arrest almost a decade earlier. As Ms. Watkins points out, however, the bare claim that nine years later Officer Strandberg did indeed recall this unexceptional routine arrest, not even leading to pressing charges, much less to a conviction, is implausible on its face and might itself be treated with a suspicion of mendacity. The suspicion might be reasonably amplified by Officer Strandberg's own deposition testimony that there was nothing about the arrest which would make him recall anything about "the lady" as opposed to her male friend and by his statements to the Personnel Review Board that he made no such statements about Watkins as the Department claimed.

An employer may be entitled to appraise the evidentiary basis for its personnel determinations as it sees fit, and it may even be entitled to rely on inherently dubious statements impeached by the person who gave them, although I need not decide these questions here. A rational trier of fact might believe that the Department relied on such statements, but it might not, and the more incredible the statement, the stronger the basis a rational trier of fact would have to reject it. *See Wichmann*, 180 F.3d at 803 ("[T]he less sensible an employer's decision appears to be, the more likely it is that the jury w[ould] not credit it.") (internal citations omitted).

Finally, Ms. Watkins' behavior at the time of her arrest that supposedly provided the basis the City's decision not to hire

her would not appear to support the claim that she had in fact done anything unlawful.[3] She was purportedly "argumentative and uncooperative," but while I would not condone discourtesy, it is not a crime to be rude to a police officer. Ms. Watkins was not in fact charged with disorderly conduct at the time when she was arrested. These facts might create doubt in the mind of a rational trier of fact whether the City in fact relied on Officer Strandberg's statement to disqualify Ms. Watkins' candidacy. A genuine issue of material fact therefore exists with respect to Ms. Watkins' disparate treatment claim.

## III.

■ Ms. Watkins also sues the City under a disparate impact theory based on the premise that (1) she was rejected under a policy of refusing to hire persons who have been arrested and (2) that policy has a disparate impact on African Americans. A claim of disparate impact does not require a showing that the defendants intended to discriminate against the plaintiff. *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir.1996) (*citing Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 645–46, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)). A disparate impact exists where a specified employment practice, although neutral on its face, has a disproportionally negative effect on members of a legally protected class. *Id.* (*citing Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986–87, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)). The disparate impact theory of Title VII liability may be utilized to challenge both objective and subjective selection processes. *Id.* (*citing Watson*, 487 U.S. at 991, 108 S.Ct. 2777).

The practice Ms. Watkins challenges would be an objective practice. Any such policy of refusing to hire persons who have been arrested but not convicted has been

---

**3.** Sergeant Parizanski mentions Ms. Watkins' possession of the knife as a sort of illegal conduct, but the City does not raise this line of argument, probably in view of Officer Strandberg's testimony that he accepted Ms. Watkins' story that it was her male friend's knife and she did not know it was in the pouch her friend asked her to carry. This raises other questions about why she was arrested at all, but Ms. Watkins did not press the matter then and it is not pertinent here.

generally disapproved in view of its proven adverse racial impact, *see, e.g., Reynolds v. Sheet Metal Workers, Local 102,* 498 F.Supp. 952, 960 (D.C.C.1980) (African Americans a quarter of the arrested but only 12% of the population), and its marginal job-relatedness. *See Schware v. Board of Bar Examiners,* 353 U.S. 232, 241, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) ("An arrest shows nothing more than someone probably suspected the person apprehended of an offense."). As the Central District of California held, there is "no evidence ... that persons who have ... no criminal convictions but have been arrested ... can be expected ... to perform less efficiently or honestly than other employees." *Gregory v. Litton Sys.,* 316 F.Supp. 401, 403 (C.D.Cal.1970), *aff'd and vacated in part on other grounds,* 472 F.2d 631 (9th Cir.1972); *see also Dozier v. Chupka,* 395 F.Supp. 836, 850 (S.D.Ohio 1975) (arrest records cannot be used as absolute bar, but employer may consider individual arrest records if it can show enough job relatedness).

Ms. Watkins, however, fails to satisfy the legal requirements for making out a prima facie case under a disparate impact theory. These require a plaintiff to first isolate and identify "the specific employment practices that are allegedly responsible for any observed statistical disparities." *Watson,* 487 U.S. at 994, 108 S.Ct. 2777. Once the plaintiff has indicated these allegedly discriminatory employment practices, she must demonstrate causation by offering "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotion because of their membership in a protected group." *Id.; see also Vitug,* 88 F.3d at 513.

Ms. Watkins makes no statistical showing whatsoever that there was any exclusion of applicants or any observed disparities in the Department, as opposed to statistical evidence that African Americans are arrested at higher rates than whites in the general population. A rea-

sonable jury could not conclude on this basis that there were in fact disparities in the Department that were caused by the hiring practice she contests. Since she has not shown that there was any racial exclusion of applicants, she has not shown that such exclusion was due to a refusal to hire persons who had been arrested but not convicted. *See Matthews v. Runyon,* 860 F.Supp. 1347, 1357 (E.D.Wis., 1994) (plaintiff failed to show "that a racial disparity exist[ed at work], let alone that such divergence was caused by [the challenged practice]."). She had every opportunity through discovery to inquire into the Department's hiring and retention policies and develop the appropriate statistical analysis, but she did not do so.

The City's motion for summary judgment on Ms. Watkins' disparate treatment claim is DENIED; its motion for summary judgment on her disparate impact claim is GRANTED. The City's motion to strike parts of Ms. Watkins' statement of material facts is DENIED as moot.