Deborah OVERSTREET, Plaintiff,

v.

Beverly MYERS, Chicago Police Sergeant, Defendant.

No. 98 C 7094.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 22, 1999.

Kenneth N. Flaxman, Attorney at Law, Chicago, IL, for Plaintiff.

M. David Weisman, Assistant Corporation Counsel, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Sergeant Beverly Myers of the Chicago Police Department arrested Ms. Deborah Overstreet for disorderly conduct when Ms. Overstreet failed to leave an office at the police station when Sergeant Myers ordered her to. At the arrest she also took and failed to return some of Ms. Overstreet's possessions. Ms. Overstreet filed this individual capacity lawsuit against Sergeant Myers under 42 U.S.C. § 1983, alleging that the sergeant had arrested her in violation of her Fourth Amendment rights and unlawfully deprived her of property in violation of due process. Sergeant Myers moves for summary judgment, and I deny the motion.

In July 1988, Ms. Overstreet, a Cook County Correctional Officer, came to the Fourth District Police Station in Chicago, Illinois, because she had been informed that her daughter had been arrested for fighting another girl. The girls continued to argue loudly in the station house, and Sergeant Myers emerged from a side room with Officer Victoria Richards, both dressed in plain clothes. Ms. Overstreet knew that Officer Richards was a police officer from previous encounters with her, but, while she assumed that Sergeant Myers was a police officer, she did not know her or her position. Ms. Overstreet quieted her daughter and she had some words with the other girl's mother about their daughters' behavior. Officer Richards grabbed Ms. Overstreet by the upper arm and said, "You sit down before you find yourself in the same predicament as your daughter." Officer Richards and Sergeant Myers went back into the office and made phone calls. Ms. Overstreet watched, and when Officer Richards was done, asked whether they might speak.

According to Ms. Overstreet, Officer Richards invited her into the office. Ms. Overstreet then asked Officer Richards why she had placed her hand on her and spoken to her in that way. Sergeant Myers then stood up and stated, "She did it because she can. She's a police. You get out of here and you get out of here now." Ms. Overstreet asked Officer Richards, "Am I doing something wrong by asking you a question?" At this point Sergeant Myers said, "Have a seat, you're under arrest." Ms. Overstreet was eventually

booked and jailed for the night. During the booking, Sergeant Myers took Ms. Overstreet's Cook County Correctional Officer's star, and it was never inventoried or returned.

Sergeant Myers adds that the office where the main events in this case took place was the gang tactical office, a smallish office which contains plastic cafeteria-style chairs. She says that when Ms. Overstreet entered the office, she and Officer Richards were helping to process the arrest of a gangbanger who had been arrested for possession of a kilo of cocaine. The arrestee was handcuffed to the wall and the kilo of cocaine was in the office as well. Sergeant Myers and Officer Williams thought that other arrestees might be sent to that office shortly. Sergeant Myers says that Ms. Overstreet spoke in such a loud and disruptive way that she had to hang up an official phone call. She states that she ordered Ms. Overstreet to leave the office twice, not once, before she arrested her. Otherwise their accounts are mutually consistent.

■ Summary judgment is appropriate where there is no genuine issue of material fact and a moving party is entitled to judgment as a matter of law. *Dawn Equipment Co. v. Micro–Trak Systems, Inc.*, 186 F.3d 981, 986 (7th Cir.1999); Fed. R.Civ.P. 56(c). I view the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party. *Fulk v. United Transportation Union*, 160 F.3d 405, 407 (7th Cir.1998). Sergeant Myers says that she had probable cause to arrest Ms. Overstreet for disorderly conduct, which, if true, would bar a § 1983 claim for false arrest. A police officer has probable cause to make an arrest if she has trustworthy information sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The officer's belief need not be correct or even more likely true than false, so long as it is reasonable.

*Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

■ To determine whether a prudent person in Sergeant Myers' situation would have a reasonable belief that Ms. Overstreet had committed a crime, I look at the relevant provision of the Illinois disorderly conduct statute: "A person commits disorderly conduct when he knowingly: (1)[d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace. . . ." 720 ILCS 5/26–1. A plain reading of the statute, taken together with the facts construed most favorably to Ms. Overstreet, as they must be for purposes of a summary judgment motion, will not support Sergeant Myers' claim that she had probable cause for arrest. Ms. Overstreet may have been rude to Officer Williams, but as I have said in a similar context, "while I would not condone discourtesy, it is not a crime to be rude to a police officer." *Watkins v. City of Chicago*, 73 F.Supp.2d 944, 947–48 (N.D.Ill. 1999); *see also Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir.1998) ("Illinois law was clear that arguing with a police officer, even if done loudly, was insufficient, standing alone, to constitute disorderly conduct.").

Sergeant Myers acknowledges this, but asserts that this case presents something more. She lists the following additional factors: (1) Ms. Overstreet's failure to obey her lawful order interfered with her ability to conduct her police duties because she had to hang up her official call; (2) an unsafe situation was supposedly created by this failure because the arrestee being processed in the room was a high ranking street gang member; Ms Overstreet's conduct interfered with the officers' ability to guard him and the kilo of cocaine; (3) Ms. Overstreet had ready access to lightweight furniture that could have been thrown at the officers.

■ Sergeant Myers has got to be kidding. The "types of conduct that may

be disorderly conduct 'almost defy definition,'" *Biddle v. Martin*, 992 F.2d 673, 677 (7th Cir.1993) (internal citation omitted), but inducing an officer to hang up a phone call of no asserted or demonstrated importance surely does not qualify. Failure to obey a lawful order may be sufficient basis to arrest an individual for disorderly conduct, but the seriousness of the offense has to be taken into account. *People v. Davis*, 82 Ill.2d 534, 45 Ill.Dec. 935, 413 N.E.2d 413, 415 (1980) ("the culpability under the section revolves not only around the type of conduct, but is equally dependent upon the surrounding circumstances"). When the order is given only once (as I must here assume it was) or even twice (as Sergeant Meyers asserts) in a context where nothing more is at stake than what Sergeant Meyers offers here, there is no probable cause to think that a crime has been committed.[1]

■ Similarly, Sergeant Myers cannot really expect me to believe that an angry woman carrying only a sheriff's star posed a real safety threat in a room where an arrestee was handcuffed to the wall and a kilo of cocaine was guarded by two (presumably armed) officers in a police station itself filled with armed police. Even the anticipated arrival of other arrestees, presumably handcuffed and guarded by other armed officers, should make no difference. If Ms. Overstreet was a safety threat, we would have a lot more to worry about than I hope we do. Who was Sergeant Myers expecting, the Terminator?

■ These arguments are merely absurd. More deeply disturbing is Sergeant Myers' argument that she had probable cause to arrest Ms. Overstreet merely because she was angry and there were chairs about which Ms. Overstreet *might have thrown*. The police cannot be allowed to suppose that they have probable cause to arrest people who are merely in the vicinity of things that might, hypothetically, be weapons if they, also hypothetically, were

inclined to use them as such. That would give the police probable cause to arrest anyone who is not already handcuffed to the wall.

■ Sergeant Meyers argues that even if she did not have probable cause to arrest Ms. Overstreet, she has qualified immunity as a governmental official performing a discretionary function. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Such immunity exists insofar as the conduct in question "does not violate clearly established statutory rights of which a reasonable person would know." *Id.* In the context of an unlawful arrest, the Seventh Circuit directs me to consider "whether a reasonable police officer could have mistakenly believed that probable cause existed." *Kelley v. Myler*, 149 F.3d 641, 648 (7th Cir.1998). If so, the case should not go to trial. *Eversole v. Steele*, 59 F.3d 710, 717–18 (7th Cir.1995). Officer Myers offers no additional explanation of why she might have mistakenly believed that she had probable cause beyond the factors already mentioned and dismissed. Her reasons are so slight that they cannot be taken seriously. I find that they did not provide her with grounds for a reasonable but mistaken belief that probable cause existed. Sergeant Myers is therefore not entitled to qualified immunity.

■ Ms. Overstreet also sues under a due process theory, alleging that Sergeant Myers took her star incident to her arrest, did not inventory it, and did not return it. Sergeant Myers admits these facts, but argues in response that the Supreme Court has held that intentional deprivations of property by state actors do not violate due process when there exist adequate post-deprivation remedies, such as a state action for conversion. It cites *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). But that case is not on point. The Court there ad-

1. This also disposes of Sergeant Myers' arguments that she had probable cause to arrest Ms. Overstreet for the "closely related charges" of obstructing a police officer and criminal trespass to property.

dressed "*unauthorized* intentional deprivation of property"—thefts, in short. *Id.* (emphasis added) Here the property was taken as part of the routine arrest process and so was authorized. *Hudson* does not apply, and Ms. Overstreet's action for the deprivation of the star may go to the jury.

Sergeant Myers is also mistaken in thinking that Ms. Overstreet cannot sue under the Fourteenth Amendment due process clause even if, as she contends, there was no unlawful seizure under the Fourth Amendment. The sergeant has not established the latter point to start with, but in any event there is no reason why Ms. Overstreet cannot proceed under the theory that the sergeant violated more than one constitutional right. For this reason Sergeant Myers' qualified immunity theory also fails. Whatever the unclarity of Ms. Overstreet's Fourth Amendment rights, her Fourteenth Amendment rights were crystal clear and a reasonable officer would have known about them.

Finally, Sergeant Myers argues that Ms. Overstreet lacks standing because she is not the "true owner" of the star; according to the sergeant only the Sheriff has standing. This represents an incorrect understanding of property law. Ms. Overstreet was the rightful possessor and as such entitled to recover, *e.g.,* in replevin, *see, e.g., Kernott v. Behnke,* 311 Ill.App. 389, 36 N.E.2d 575, 578 (1941), or indeed, as Sergeant Myers herself suggests, in conversion. If she has enough of a possessory interest to sue for conversion or replevin, she has enough of a possessory interest to sue for deprivation of property without due process.

I therefore DENY Sergeant Myers' motion for summary judgment on the § 1983 counts involving the unlawful arrest and the deprivation of property.